UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X
MARIO FRATI, STACY FRATI and                    :
BANCO POPOLARE (Luxembourg) S.A.           :   Case No. 10 Civ. 3255
                                                              :
                              Plaintiffs,             :
                                                              :
                    -v-                                    :
                                                              :
STEPHEN E. SALTZSTEIN, *et al.*              :
                                                              :
                              Defendants.           :
                                                              :
-------------------------------------------------------- :
                                                              :
                                                              :
                                                              :
                                                              :
                                                              :
                                                              :
                                                              :
                                                              :
                                                              :
                                                              X

---

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

---

**LOWENSTEIN SANDLER PC**
1251 Avenue of the Americas
New York, New York  10020
212-262-6700
Attorneys for Defendants

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................ ii

PRELIMINARY STATEMENT ........................................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ...................... 5

LEGAL STANDARD ...................................................................... 9

LEGAL ARGUMENT ...................................................................... 10

POINT I

PLAINTIFFS' REPRESENTATIONS, WARRANTIES, AND
DISCLAIMERS IN THE SUBSCRIPTION AGREEMENTS
PRECLUDE ALL OF THEIR FRAUD-BASED CLAIMS. ............................ 10

A.     Plaintiffs Disclaimed Reliance on External Representations. .............. 13

B.     Plaintiffs Cannot Allege a Fraud by Omission Because Defendants had
No Duty to Disclose. ......................................................... 15

POINT II

PLAINTIFFS FAIL TO ALLEGE THE LOSS REQUIRED TO SUSTAIN
THEIR FRAUD-BASED CLAIMS. .................................................... 18

POINT III

PLAINTIFFS FAIL TO MEET THE HEIGHTENED PLEADING
STANDARDS FOR THEIR CLAIMS OF COMMON LAW FRAUD AND
UNDER RULE 10B-5 ................................................................ 19

POINT IV

PLAINTIFFS' STATUTORY RESCISSION CLAIM MUST BE
DISMISSED AS PLAINTIFFS CANNOT ALLEGE THAT THEIR
AGREEMENTS ARE FACIALLY UNLAWFUL. ...................................... 21

POINT V

PLAINTIFFS LACK STANDING TO ASSERT CLAIMS FOR BREACH
OF FIDUCIARY DUTY, UNJUST ENRICHMENT, AND DECLARATORY
JUDGMENT. ......................................................................... 23

POINT VI

PLAINTIFFS FAIL TO ADEQUATELY PLEAD A CAUSE OF ACTION
FOR BREACH OF CONTRACT .................................................... 25

CONCLUSION .......................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**PAGES**

**CASES**

*ABF Capital Mgmt.v. Askin Capital Mgmt., L.P.*,
  957 F. Supp. 1308 (S.D.N.Y. 1997) ........................................................ 24

*Acito v. IMCERA Gr.*,
  47 F.3d 47 (2d Cir. 1995).............................................................12, 20

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
  404 F.3d 566 (2d Cir. 2005)........................................................... 13

*Aetna Cas. & Sur. Co. v. Namrod Dev. Corp.*,
  140 B.R. 56 (S.D.N.Y. 1992) .......................................................... 24

*Am. Fuel Corp. v. Utah Energy Dev. Co.*,
  122 F.3d 130, 134 (2d Cir. 1997) ...................................................... 17

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ................................................................... 9

*Ashland v. Morgan Stanley*,
  No. 09-Civ.-5415(RPP), 2010 U.S. Dist. WL 1253932, *16
  (S.D.N.Y. Mar 30, 2010) ............................................................... 23

*B & M Linen, Corp. v. Kannegiesser, USA, Corp.*
  679 F.Supp. 2d 474, 480 (S.D.N.Y. 2010)............................................. 18

*Banque Arabe et Internationale D'Investissement v. Md. Int'l Bank*,
  57 F.3d 146 (2d Cir. 1995).............................................................. 13

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)..................................................................... 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................... 9

*Boguslavsky v. Kaplan*,
  159 F.3d 715, 722 (2d Cir. 1998) ..................................................... 21

*Carden v. Arkoma Assocs.*,
  494 U.S. 185, 195-96 (1990)........................................................... 23

*Ciresi v. Citicorp,*
    782 F.Supp. 819, 823 (S.D.N.Y. 1991) ................................................. 17

*In re Citigroup, Inc.,*
    330 F.Supp.2d 367, 375 (S.D.N.Y. 2004) ........................................... 12

*Cohen v. Citibank,*
    1997 U.S. Dist. WL 88378, at *1 (S.D.N.Y. 1997) ............................. 21

*Commander Terminals, LLC v. Commander Oil Corp.,*
    897 N.Y.S.2d 151 (App. Div. 2010) .................................................... 15

*Danann Realty Corp. v. Harris,*
    5 N.Y.2d 317 (1959) ........................................................... 13, 14, 15, 16

*Decker v. Massey-Ferguson, Ltd.,*
    681 F.2d 111, 115 (2d Cir. 1982) ...................................................... 12

*Druck Corp. v. Macro Fund Ltd.,*
    290 Fed. Appx. 441 (2d Cir. 2008) .................................................... 24

*EBC I, Inc. v. Goldman Sachs & Co.,*
    5 N.Y.2d 11, 19-20 (2005) ................................................................. 16

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Gr.,*
    343 F.3d 189, 195 (2d Cir. 2003) ...................................................... 14

*Green v. Wolf Corp.,*
    406 F.2d 291, 303 (2d Cir. 1968) ...................................................... 18

*Goldman v. Metro. Life Ins. Co.,*
    5 N.Y.3d 561, 572 (2005) .................................................................. 24

*Goodman v. Shearson Lehman Bros., Inc.*
    698 F. Supp. 1078, 1086 (S.D.N.Y. 1988) ........................................ 21

*Goodman Mfg. Co. v. Raytheon Co.*, No. 98-Civ-2774 (LAP), 1999 U.S. Dist. WL
    681382, *4 (S.D.N.Y. Aug. 31, 1999) ................................................. 2

*Grumman Allied Indus. Inc. v. Rohr Indus. Inc.,*
    748 F.2d 729 (2d Cir. 1984) .......................................................... 13, 16

*Harborview Master Fund, LP v. Lightpath Techs., Inc.,*
    601 F.Supp.2d 537, 549 (S.D.N.Y. 2009) ....................................... 12, 13

*Harsco Corp. v. Segui*, 91 F.3d 337 (2d Cir. 1996) ................................. 12

*In re Ionosphere Clubs, Inc.,*
    17 F.3d 600 (2d Cir. 1994) ................................................................ 24

-iii-

*Komanoff v. Mabon, Nugent & Co.*,
   884 F.Supp. 848, 861 (S.D.N.Y. 1995) ............................................................ 18

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006) ............................................................................... 19

*M & R Ginsburg, L.C.C. v. Orange Canyon Dev. Co.*,
   893 N.Y.S.2d 369, 371 (App. Div. 2010) .......................................................... 11

*Mayline Enters, Inc. v. Milea Truck Sales Corp.*,
   641 F.Supp. 2d 304, 311-12 (S.D.N.Y. 2009) ................................................... 18

*Millowitz v. Citigroup Global Mkts., Inc.*
   544 F.3d 474, 478 n.1 (2d Cir. 2008) ................................................................ 18

*Mills v. Polnar Molecular Corp.*,
   12 F.3d 1170 (2d Cir. 1993) ............................................................................... 19

*Nat'l Med. Health Card Sys. v. Fallarino*,
   863 N.Y.S.2d 556, 562 (Sup. Ct. 2008) ........................................................10, 11

*New Castle Siding Co. v. Wolfson*,
   97 A.D.2d 501 (N.Y. App. Div. 1983) ............................................................... 24

*Nomura Secs. Int'l, Inc. v. E*Trade Secs., Inc.*,
   280 F. Supp. 2d 184, 202 n. 9 (S.D.N.Y. 2003) ................................................ 11

*Nordic Bank PLC v. Trend Gr., Ltd.*,
   619 F.Supp. 542 (S.D.N.Y. 1985) ...................................................................... 25

*Occidental Hotels Mgmt. B.V. v. Westbrook Allegro L.L.C.*
   2009 U.S. Dist. WL 2482157, *1 (S.D.N.Y. Aug. 12, 2009) ............................. 23

*Pac. Inv. Mgmt. Co. v. Mayer Brown LLP*,
   603 F.3d 144, 156 (2d Cir. 2010) ...................................................................... 10

*Pompano - Windy City Partners v. Bear Stearns & Co.*,
   794 F. Supp. 1265, 1288-89 (S.D.N.Y. 1992) ................................................... 21

*Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*,
   68 F.3d 1478 (2d Cir. 1995) ............................................................................... 16

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004) ............................................................................... 22

*S. Cherry St., LLC v. Hennessee Group LLC*,
   573 F.3d 98 (2d Cir. 2009) ................................................................................. 20

*San Diego Cnty. Emps. Ret. Ass'n v. Maounis*,
   No. 07-Civ-2618 (DAB), 2010 U.S. WL 1010012 (S.D.N.Y. Mar 15, 2010)................passim

*Santa Fe Indus. v. Green*,
   430 U.S. 462, 476 (1977) ................................................................................. 12

*Sazerac Co. v. Falk*,
   861 F. Supp. 253 (S.D.N.Y. 1994) ..................................................................... 10

*In re Scholastic Corp. Secs. Litig.*,
   252 F.3d 63 (2d Cir. 2001)................................................................................. 19

*Schupak Gr., Inc. v. Travelers Cas. & Surety Co.*,
   No. 10 Civ. 209 (SAS), 2010 U.S. Dist. WL 1487737 (S.D.N.Y. Apr. 13, 2010)................ 25

*Seippel v. Sidley, Austin, Brown & Wood, LLP*,
   399 F. Supp.2d 283 (S.D.N.Y. 2005) .............................................................19, 20

*Stoneridge Inv. Partners, LLC v. Scientific Atlanta, Inc.*,
   552 U.S. 148, 159 (2008).............................................................................10, 18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)....................................................................................9, 19, 20

*Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw*,
   612 F. Supp. 2d 267 (S.D.N.Y. 2009) ................................................................. 19

*In re Time Warner Inc. Sec. Litig.*,
   9 F.3d 259 (2d Cir. 1993)................................................................................... 15

*Univ. Licensing Corp. v. Paolo Del Lungo*,
   F.3d 579, 580-82 (2d Cir. 2002).....................................................................22, 23

*Urquhart v. Philbor Motors, Inc.*,
   780 N.Y.S.2d 176, 176 (App. Div. 2004) ........................................................... 11

*Wells Bros. v. United States*,
   254 U.S. 83 (1920) ........................................................................................... 15

*Wis. Dep't of Corr. v. Schacht*,
   524 U.S. 381, 388 (U.S. 1998) .......................................................................... 22

*Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*,
   341 F.Supp.2d 258 (S.D.N.Y. 2004) .................................................................. 22

*Yak v. Bank Brussels Lambert, BBL (USA) Holdings, Inc.*,
   252 F.3d 127 (2d Cir. 2001)................................................................................ 2

*Zerman v. Jacobs*,
    510 F.Supp. 132 (S.D.N.Y. 1981) ...................................................................... 21

## STATUTES

15 U.S.C. §78(bb)(a) ........................................................................................... 18

15 U.S.C. § 78u-4(b)(1) ...................................................................................... 19

15 U.S.C. § 78u-4(b)(2) ...................................................................................... 20

Private Securities Litigation Reform Act of 1995 (the "PSLRA") .................................... 4

Section 10(b) of the Securities Exchange Act of 1934 (the "'34 Act") ..............................passim

28 U.S.C. § 1332(a) ............................................................................................ 22

N.Y. Gen. Bus. Law § 352 .................................................................................... 23

## RULES

Federal Rule of Civil Procedure Rule 9(b) ........................................................ 1, 4, 19, 21, 22

Federal Rule of Civil Procedure Rule 8 ......................................................................... 5

Rule 10(b)(5) ..................................................................................................2, 3, 18, 19

Federal Rule of Civil Procedure Rule 12(b)(6) ........................................................... 9

Defendants Stephen E. Saltzstein ("Saltzstein"), Michael E. Fein ("Fein"), RAM Capital Resources, LLC, Shelter Island Opportunity Fund, LLC ("Shelter" or a "Fund"), Shelter Island GP, LLC ("Shelter GP"), Midway Management Partners, LLC ("Midway"), Truk International Fund, LP ("Truk" or a "Fund," and together with Shelter, the "Funds"), Truk Opportunity Fund, LLC ("Truk Opportunity"), and Atoll Asset Management, LLC ("Atoll") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the amended complaint filed by Mario Frati and Stacy Frati (together, the "Fratis"), and Banco Popolare (Luxembourg) S.A. ("BPL," and collectively with the Fratis, "Plaintiffs") pursuant to Rules 12(b)(6), 9(b) and 12(b)(1) of the Federal Rules of Civil Procedure, for failure to state a claim and for lack of standing.

## PRELIMINARY STATEMENT

Plaintiffs' amended complaint is a transparent attempt to use litigation to extract a result to which they are not entitled under the clear and unambiguous terms of the agreements that exclusively govern the parties' relationships.  At best, this is a dispute over the parties' contractual rights and obligations – not a federal fraud case.  Each and every one of the claims pled is unsustainable as a matter of law, and Plaintiffs' amended complaint should be dismissed.

Plaintiffs are self-avowed sophisticated investors who invested an aggregate of $3.5 million in Shelter and Truk, investment funds that are currently in the process of winding down and distributing liquidation proceeds to all of their investors on a ratable basis.  Because the majority of the Funds' assets are not highly liquid, the wind-down process requires significant time and care to maximize value for all investors.  An immediate liquidation of all assets would result in a "fire sale" and could materially impact the cash that the Funds ultimately return to all investors in an orderly liquidation process.  At the same time, in this liquidation context, neither the governing documents nor equity permit redeeming a single investor's capital in full, while other investors receive their pro rata share of proceeds as the Funds' assets are liquidated over time.  Yet, such special treatment is precisely what Plaintiffs seek to achieve by

this action.   Apparently unsatisfied to wait alongside other investors, Plaintiffs brought this action in an effort to jump the line, *i.e.*, to effect an immediate, cash redemption in full through claims that (despite a variety of labels) all seek rescission.   These claims – in addition to being purely tactical and vitriolic – are fatally flawed as a matter of law and should be dismissed.

   *First,* Plaintiffs' alleged claims for Common Law Fraud (Count I), alleged violation of Section 10(b) of the Securities Exchange Act of 1934 (the "'34 Act") and Rule 10b-5 promulgated thereunder (Count II), and Fraud in the Inducement (Count III) are precluded as a matter of law by one of the few documents Plaintiffs chose *not* to attach to their amended complaint:  the subscription documents by which they invested in the Funds.[1]  In connection with their investments, each Plaintiff executed a Subscription Agreement which, together with the organizational documents for the Funds incorporated by reference therein, created and continue to govern exclusively the relationships between Plaintiffs and Defendants.   Within the *first three pages* of those Subscription Agreements, Plaintiffs expressly and unambiguously declared, represented, and warranted, *inter alia,* that each:

- "**has carefully read, understands and agrees to abide by the terms set forth in the [Confidential Offering] Memorandum, and the [governing] Agreement of the Fund**, including without limitation (i) the compensation arrangements, (ii) all other terms of the offering, including all risk factors . . . withdrawal, transfer, and other rights, and (iii) the Managing Member's powers, duties and obligations";

- "confirms that the Managing Member has made available to [each Plaintiff] the opportunity to ask questions of, and receive answers from, the Managing Member concerning the terms and conditions of this offering, and to obtain any additional information which the Fund had in its possession . . .";

- "**[i]n deciding to invest in the Fund . . . has relied solely upon the information in the Memorandum and has not relied on oral representations or warranties**";

---

[1]  The Court may properly consider documents that are integral to the claims at issue without converting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) into a motion for summary judgment.  *See, e.g.*, *Yak v. Bank Brussels Lambert, BBL (USA) Holdings, Inc.*, 252 F.3d 127, 130 (2d Cir. 2001).  To the extent the documents contradict factual allegations in the pleadings, the documents control.  *Goodman Mfg. Co. v. Raytheon Co.*, No. 98-Civ-2774 (LAP), 1999 U.S. Dist. WL 681382, *4 (S.D.N.Y. Aug. 31, 1999) (citing *Int'l Audiotext Network, Inc. v. AT&T, Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

- "has been advised that no person is authorized to give any information or to make any statement not contained in the Memorandum, and that any information or statement not contained therein must not be relied upon as having been authorized by the Fund";

- understands that "the purchase of Interests represents risk capital" and "**is able to afford an interest in a speculative venture having the risks and objectives of the Interests and can sustain a loss of this entire investment**"; and

- "is experienced in investments of this kind"

(Emphasis added).  *Virtually every allegation on which Plaintiffs' claims are based directly contradicts the representations and warranties they made in their Subscription Agreements.*  In a strikingly similar case, Judge Batts recently held that virtually identical language in subscription agreements *precluded as a matter of law* all of the plaintiffs' fraud-based claims.  *See San Diego Cnty. Emps. Ret. Ass'n v. Maounis*, No. 07-Civ-2618 (DAB), 2010 U.S. Dist. WL 1010012, *1 (S.D.N.Y. Mar. 15, 2010).  As in *San Diego*, Plaintiffs are sophisticated investors – here, high-net-worth individuals and an Italian bank – who decided to put millions of dollars into alternative investment funds.  Enforcing their clear and unambiguous representations and warranties as written is consistent with the most basic principles of contract law.  Contrariwise, allowing Plaintiffs to disavow these representations, warranties, and express disclaimers would eviscerate the contracts that govern the parties' relationships and undermine the ability of parties in any commercial transaction to contractually allocate risk with any degree of certainty.  Plaintiffs clearly stated that they did not rely on any representations beyond those made within the four corners of the Memoranda (defined below).  The law does not permit Plaintiffs now to claim reliance on clearly disclaimed alleged outside representations.

        *Second,* even if Plaintiffs' fraud-based claims were not precluded as a matter of law by their contractual disclaimers (as they were in *San Diego* and are here), the claims nevertheless would fail because the amended complaint fails to allege any economic loss.  It is indisputable that an essential element of a claim under Section 10(b) and Rule 10b-5 is an actual, out-of-pocket loss.  Common law fraud also requires a showing of damages.  Not only does the amended complaint not identify such requisite loss, it admits that between the date of their initial

investment and their redemption request, the Fratis' investment increased in value. Rather, the supposed "damages" Plaintiffs claim in actuality are the amount of their initial investments. However, rescission is not an available remedy for a claim under Section 10(b). Likewise, Plaintiffs' purported claims for punitive damages are clearly precluded under Section 10(b), and are similarly unavailable under New York law in this private-party context.

       *Third,* Plaintiffs' fraud-based claims do not meet the heightened pleading standards required by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Rule 9(b) of the Federal Rules of Civil Procedure. Among other things, the amended complaint is devoid of facts that could give rise to the strong inference of scienter necessary to maintain the fraud-based claims. These pleading deficiencies alone warrant dismissal of the claims.

       *Fourth*, Plaintiffs' claim for rescission under Section 29(b) of the '34 Act (Count VI) fails, as Plaintiffs cannot allege that the contracts between the parties are incapable of being performed lawfully. Even assuming Plaintiffs have standing to bring such a claim, Section 29(b) only allows rescission if the contract itself cannot be performed in a lawful way. Hedge fund subscription agreements – the only contracts directly between Plaintiffs and any of the Defendants – clearly are capable of being lawfully performed. Furthermore, even if Plaintiffs could plead a viable claim under Section 29(b), their claim still would fail because the amended complaint, which sounds in fraud, fails to plead with particularity which acts required by or permitted under the Subscription Agreements were facially unlawful. Because there are none.

       *Fifth,* the Court need not even reach the specific flaws that are fatal to Plaintiffs' claims for Breach of Fiduciary Duty (Count IV), Declaratory Judgment (Count V), and Unjust Enrichment (Count VII). As a preliminary matter, the claims for Breach of Fiduciary Duty and Unjust Enrichment are precluded by the Martin Act. Additionally, even if a private right of action were available, these claims – as well as the claim for Declaratory Judgment – still would fail for lack of standing because such claims, as they were in *San Diego*, are derivative. To the extent any such claims exist (which Defendants deny), as a matter of law, they belong to the Funds and cannot be asserted by Plaintiffs.

*Sixth*, Plaintiffs' breach of contract claim must be dismissed as Plaintiffs have failed to allege which specific provisions of the contracts Defendants allegedly breached. Not even the liberal pleading standard of Rule 8 of the Federal Rules of Civil Procedure requires Defendants to litigate by guesswork.

*Finally,* with no viable federal claims, Plaintiffs lack an independent basis on which to invoke the subject matter jurisdiction of the Court, and Defendants submit that the Court should decline to exercise supplemental jurisdiction over what is, at best, a state law-based contract dispute. Plaintiffs' assertion that diversity jurisdiction exists is simply wrong, as the citizenship of a limited partnership or a limited liability company is determined based on the citizenship of its limited partners or members, as the case may be. Plaintiffs' failure to plead the citizenship of Defendants' members and limited partners is a pleading deficiency that, in any event, cannot be overcome because complete diversity is lacking.

For the foregoing reasons, and others explained herein, Defendants respectfully submit that Plaintiffs' amended complaint should be dismissed.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### *The Investments in Shelter and Truk*

Shelter and Truk are hedge funds in which Plaintiffs invested. As set forth in the Agreements (defined below), the primary investment objective of Shelter is to achieve current income and capital appreciation through secured investments in the form of loans to both public and private companies, convertible notes and non-convertible notes, preferred equity, and, from time-to-time, private investments in public equities ("PIPEs"). Truk's primary investment objective is to achieve capital appreciation through PIPEs. As is typical for a hedge fund, and as disclosed in the Agreements, each Fund has a Managing Member or General Partner (Shelter GP for Shelter and Atoll for Truk) that is responsible for trading and investment decisions, and an Investment Manager (Midway for both Funds) that handles day-to-day investment activities.

Rather than purchasing a security or a specific asset, an investor or "Subscriber"

in Shelter or Truk purchases an interest in the Fund itself.  The interests are offered on a private placement basis to Subscribers who satisfy certain standards and requirements – most importantly, that they are sophisticated investors.  (*See* Affidavit of Kevin M. Brennan, Esq. dated June 17, 2010 (hereinafter, "Brennan Aff."), Exhibit ("Exh.") A at 3 ¶ 8; Exh. B at 3 ¶ 8; Exh. C at 5, 27, 41; and Exh. E at 5, 22, 36.)  A Subscriber's interest in a Fund is determined based on his, her, or its capital contribution relative to the contributions of all Subscribers of that Fund.

On November 8, 2007, BPL, a bank based in Verona, Italy, signed the Truk Subscription Agreement to invest $1,500,000.  According to the amended complaint, BPL was acting in its capacity as an investment adviser for Ms. Mirella Siroli, Mario Frati's mother.  In signing the Subscription Agreement, BPL represented that it had "prior experience in investing in the private placement of restricted securities involving the payment of performance based compensation."  (*See* Brennan Aff. Exh. B at 18 ¶ 7.)  By signing the Subscription Agreement, BPL as the Subscriber also declared "that he has carefully read, understands, and agrees to abide by the terms set forth in the Memorandum and Partnership Agreement, including without limitation (i) the compensation arrangements, (ii) all other terms of the offering, including all risk factors, tax considerations, ERISA considerations, withdrawal, transfer, and other rights, and (iii) the General Partner's powers, duties, and obligations."  (*Id.*  at 1 ¶ 2.)

On January 2, 2008, on behalf of himself and his wife Stacy Frati, Mario Frati signed the Shelter Subscription Agreement to invest $2,000,000.  In the Subscription Agreement, Mr. Frati indicated that he was an individual Subscriber and an "Accredited Investor" with a net worth that exceeded $1,000,000.  (Brennan Aff. Exh. A at 8.)  By signing the Subscription Agreement, Mr. Frati declared "that he has carefully read, understands, and agrees to abide by the terms set forth in the Memorandum, and the Amended and Restated Limited Liability Company Agreement of the Fund … attached [t]hereto as Exhibit A, including without limitation (i) the compensation arrangements, (ii) all other terms of the offering, including all risk factors, tax considerations, ERISA considerations, withdrawal, transfer, and other rights, and (iii) the

Managing Member's powers, duties, and obligations." (*Id.* at 1 ¶ 2.)

### *The Investment Documents*

Both Mario Frati and BPL signed a Subscription Agreement in which they declared that they not only had read the Subscription Agreement, but that they also had read, reviewed, and were bound by each Fund's Private Placement (or Confidential Offering) Memorandum (the "Memorandum" or "Mem.") and Shelter's Limited Liability Company Agreement or Truk's Agreement of Limited Partnership (the "Fund Agreement"). (Brennan Aff. Exh. A at 1 ¶ 2, 5 ¶ 14, 6 ¶ 21; Exh. B at 1 ¶ 2, 4 ¶ 14, 6 ¶ 24.) (Subscriber understands that they are bound by the terms of the Fund Agreement and that the Subscription Agreement and the Fund Agreement represent the entire agreement of the parties.) Frati and BPL also affirmed that they had the opportunity to ask the Managing Member questions about the terms of the investment to verify the accuracy of the information contained in the Memorandum. (*Id.*) By signing the Subscription Agreements, both Frati and BPL declared that they met the suitability requirements set forth in the Memoranda (*i.e.*, that they are sophisticated, experienced investors) and that they understood the risks involved in the investment. (Brennan Aff. Exh. A at 3 ¶ 8; Exh. B at 3 ¶ 8; Exh. C at 5, 41 and Exh. E at 5, 36.) Finally, and of particular importance in this case, both parties affirmed that "*[i]n deciding to invest in the Fund, Subscriber has relied solely upon the information in the Memorandum and has not relied upon any oral representation or warranties.*" (Emphasis added) (Brennan Aff. Exh. A at 2 ¶ 3; Exh. B at 2 ¶ 3.)

Working in conjunction, the Subscription Agreements, the Memoranda, and the Fund Agreements (collectively, the "Agreements") explicitly set forth the rights, duties, and powers of the Managing Members, the Investment Mangers, and the Subscribers. Mostly, the Agreements articulate how the Funds will be managed. The Managing Member has the ability to invest a Fund's capital in any way that it sees fit to maximize value – including entering into agreements with affiliates. (Brennan Aff. Exh. C at 12; Exh. D at A-15 ¶¶ 5.1 & 5.2; Exh. E at 12; Exh. F at 9 ¶ 5.3) In exchange for managing a Fund, the Managing Member and the

Investment Manager receive certain compensation.  (*See* Brennan Aff. Exh. A at 6 ¶ 18; Exh. B at 5 ¶ 18; Exh. C at 2, 3, 32-33; Exh. D at A-9 ¶ 3.7.1, A-15 ¶ 4.1.2; Exh. E at 3, 27;  Exh. F at 8 ¶ 4.1.2.)  In fact, these experienced and sophisticated investor Plaintiffs negotiated a fee structure that was discounted from the industry standard structure disclosed in the Agreements.  (Am. Compl. at Exh. C.)  Separate and apart from this compensation, a Fund is responsible for the costs and fees associated with the operation of the Fund, such as accounting fees and legal fees. (*See* Brennan Aff. Exh. A at 6 ¶ 18; Exh. B at 5 ¶ 18; Exh. C at 4, 29, 33; Exh. D at A-14 ¶ 4.1.1; Exh. E at 4, 24, 26; Exh. F at 8 ¶ 4.1.1.)  If litigation arises, the Agreements expressly state that the Funds will indemnify the Managing Member, the Investment Manager, and their members, advisors, and affiliates.  (Brennan Aff. Exh. A at 5 ¶ 16; Exh. B at 5 ¶16; Exh. C at 28; Exh. D at A-18–A-19; Exh. E at 23; Exh. F at 12 ¶ 5.6.)

### *The Litigation*

On April 16, 2010, the Fratis and BPL filed this suit.  On June 29, 2010, Plaintiffs amended their complaint to, *inter alia*, withdraw their previously attempted assertion of claims under the Racketeering Influenced and Corrupt Organization Act.  Despite the fact that the Agreements clearly and unambiguously stated that in making their investment decisions, Plaintiffs were not relying on any statements not contained in the Memoranda, Plaintiffs' amended complaint continues to assert claims for common law fraud, alleged misrepresentations under Section 10(b) of the '34 Act and Rule 10b-5 promulgated thereunder, and fraudulent inducement based on alleged statements not contained therein.  Plaintiffs' fraud allegations are based on alleged affirmative statements regarding Saltzstein's sister's investment in Shelter, Defendants' alleged status as unregistered broker-dealers, and Saltzstein's and Fein's level of personal investment in Shelter.  (Am. Compl. at Preliminary Statement, ¶¶ 19, 27-29, 37.) Plaintiffs also alleged that Defendants managed the Funds in a fraudulent manner with respect to fees and the transfer of assets and liabilities between Shelter, Truk, and Truk Opportunity.  (Am. Compl. ¶¶ 36-42, 45-49.)  Plaintiffs pled these allegations, despite the Agreements' clear and

unambiguous disclosures regarding fee structure and the possibility that the Investment Managers may transfer assets among various financial entities, including between Shelter, Truk and/or Truk Opportunity. Additionally, Plaintiffs brought claims for fraud and unjust enrichment against Defendants for collecting fees that they specifically contracted for and expressly disclosed. And, despite clear contractual statements regarding indemnification and the ability to manage in the best interests of the Funds, Plaintiffs brought claims alleging breach of fiduciary duty and a declaration of rights under the indemnification clause. Finally, despite no factual or legal authority, Plaintiffs allege that their Subscription Agreements should be rescinded as unlawful under Section 29(b) of the '34 Act.

Even taking all of Plaintiffs' allegations as true (solely for purposes of this motion, and only to the extent that the allegations are not contradicted by documents integral to the claims), Plaintiffs are not entitled to any relief as a matter of law.

## **LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In *Twombly*, the Supreme Court of the United States required that the plaintiff's factual allegations "be enough to raise a right to relief above the speculative level." 550 U.S. at 555. A mere "formulaic recitation of the elements of a cause of action will not do." *Id.* First, the court should identify any conclusory allegations that, as a matter of law, are not entitled to a presumption of truth. *Ashcroft*, 129 S. Ct. at 1949-50. Second, the court should look to the remaining well-pled and non-conclusory factual allegations to determine whether there is a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

When a document is integral to the complaint, the Court may consider it without converting a 12(b)(6) motion into a motion for summary judgment. *See, e.g., Tellabs, Inc. v.*

*Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("courts must consider the complaint in its entirety, as well as other sources . . . in particular, documents incorporated into the complaint by reference."); *San Diego*, 2010 WL 1010012, at \*12 (incorporating by reference LLC Agreement, Subscription Agreement, and Confidential Private Placement Memorandum).  To the extent the documents contradict factual allegations in the pleadings, the documents control.  *See Sazerac Co. v. Falk*, 861 F. Supp. 253, 257 (S.D.N.Y. 1994).  Thus, in connection with the instant motion, the Court may consider the Subscription Agreements, the Memoranda, and the Fund Agreements because Plaintiffs referenced them in their amended complaint (*see* Am. Compl. ¶¶ 69, 109-111) and because they are integral to Plaintiffs' claims.

## LEGAL ARGUMENT

### POINT I

**PLAINTIFFS' REPRESENTATIONS, WARRANTIES, AND DISCLAIMERS IN THE SUBSCRIPTION AGREEMENTS PRECLUDE ALL OF THEIR FRAUD-BASED CLAIMS.**

Plaintiffs' and Defendants' business relationship is expressly governed by each Fund's Subscription Agreement, Memoranda, and Fund Agreement.  In an apparent attempt to avoid the clearly fatal effect of these documents on all of their fraud-based claims, Plaintiffs – despite attaching a stack of documents to their amended complaint as Exhibits A-N – simply omitted them.  The tactic should be unavailing, the documents should be enforced as written, and all of Plaintiffs' fraud-based claims should be dismissed.

The Agreements that govern the parties' relationships contain express representations, warranties, and disclaimers that (i) negate each allegation on which Plaintiffs' alleged fraud claims are based and (ii) preclude Plaintiffs, as a matter of law, from demonstrating the element of reasonable reliance necessary to maintain each of their fraud-based claims.[2]  In

---

[2]  *See, e.g., Stoneridge Inv. Partners, LLC v. Scientific Atlanta, Inc.*, 552 U.S. 148, 159 (2008) (reliance in a 10(b) action is necessary to ensure a "requisite causal connection" exists) (citing *Basic v. Levinson*, 485 U.S. 224, 243 (1988)); *Pac. Inv. Mgmt. Co. v. Mayer Brown LLP*, 603 F.3d 144, 156 (2d Cir. 2010) (Reliance is critical to private actions under Rule 10b-5); *Nat'l*

particular, among other things, each Plaintiff expressly acknowledged, declared, and represented (i) "that he has carefully read, understands, and agrees to abide by the terms set forth in the Memorandum, and the [Fund Agreement]" and (ii) that "[i]n deciding to invest in the Fund, Subscriber has relied solely upon the information in the Memorandum and has not relied on oral representations or warranties."   Plaintiffs cannot now disavow these clear and unambiguous representations.

In a recent case directly on point, Judge Batts, of the Southern District, enforced virtually identical disclaimers and dismissed all asserted fraud-based claims.  *See San Diego*, 2010 WL 1010012.  In *San Diego*, the plaintiff received a private placement memorandum, signed a subscription agreement, and invested in a hedge fund.  As here, the disclaimers and representations contained within the private placement memorandum and subscription agreement included a warranty by plaintiff that it "has been furnished a copy of the [PPM] and has carefully read and understands the [PPM], has evaluated the risks of a purchase of the Interest, including the risks set forth in the [PPM] . . . and has relied solely on the information contained in the [PPM] in deciding whether to invest in the Fund (irrespective of any other material and information furnished to [plaintiff] in connection with such investment.)"  *Id.* at * 3.

There, the plaintiffs brought suit alleging, *inter alia,* federal securities and common law fraud.  As here, the plaintiffs' primary allegation was that defendants made oral misrepresentations and/or material omissions to induce them to invest in the fund.  The Court dismissed the fraud-based claims, and held that "[g]iven the sophistication of [the investor] . . . and the clear, unambiguous language of the non-reliance provisions at issue, the Court finds Plaintiff's purported reliance on statements made before the execution of the Subscription

---

*Med. Health Card Sys. v. Fallarino*, 863 N.Y.S.2d 556, 562 (Sup. Ct. 2008) (common law fraud requires plaintiff to show justifiable reliance); *Urquhart v. Philbor Motors, Inc*., 780 N.Y.S.2d 176, 176 (App. Div. 2004) (justifiable reliance is an essential element of fraud); *Nomura Secs. Int'l, Inc. v. E*Trade Secs., Inc.*, 280 F. Supp. 2d 184, 202 n. 9 (S.D.N.Y. 2003) (rescission requires a material misrepresentation that is justifiably relied on); *M & R Ginsburg, L.C.C. v. Orange Canyon Dev. Co.*, 893 N.Y.S.2d 369, 371 (App. Div. 2010) ("plaintiff failed to establish the crucial element of justifiable reliance for its fraud and rescission claims").

Agreement to be ***unreasonable as a matter of law***."  *Id.* at *14, *17 (emphasis added).[3]

In this case, Plaintiffs' multiple conclusory allegations underlying their fraud claims can be broken down into three main categories:  (i) the alleged statements regarding Defendants' and Saltzstein's sister's level of investment in Shelter; (ii) the fee arrangements and business structure; and (iii) Saltzstein and Fein's failure to disclose in 2007 an SEC investigation concerning alleged unregistered broker-dealer activity in or before 2005, that in 2009 resulted in the cease and desist order attached as Exhibit A to Plaintiffs' amended complaint.  Plaintiffs cannot assert the necessary element of reasonable reliance in any of these categories because:  (a) Plaintiffs expressly waived reliance on any representations external to the Memoranda; (b) the fee arrangements and business structure were clearly stated in the contract Plaintiffs signed and acknowledged as read and understood (Brennan Aff. Exh. A at 1 ¶ 2, 2 ¶ 3; Exh. B at 1 ¶2, 2¶ 3 Exh. C at i, 4, 32-33; Exh. E at 4, 26-27.);[4] (c) Plaintiffs expressly stated they had ample opportunity to review documents and to ask any questions (Brennan Aff. Exh. A at 1 ¶ 2; and Exh. B at 1 ¶ 2); and (d) Defendants had no duty to affirmatively disclose information that Plaintiffs could have discovered in the course of reasonable diligence, and had no legal duty to disclose uncharged, unadjudicated, alleged wrongdoing.

---

[3]  *See also Harsco Corp. v. Segui*, 91 F.3d 337 (2d Cir. 1996) (disclaimer in purchase agreement precluded federal securities claims, state law fraud, and negligent misrepresentation claims); *Harborview Master Fund, LP v. Lightpath Techs., Inc.*, 601 F.Supp.2d 537, 549 (S.D.N.Y. 2009) (dicta stating that if alleged misrepresentations were actionable, stock purchase agreement disclaimer was an acknowledgement that plaintiff was not relying on them).

[4]  To the extent Plaintiffs' 10(b) claim relies on Defendants' management decisions regarding investments, extensions of credit, transfer of assets, or other similar activities, "[it] is well established by now that section 10(b) was not designed to regulate corporate mismanagement." *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 115 (2d Cir. 1982); *Santa Fe Indus. v. Green*, 430 U.S. 462, 476 (1977) (corporate mismanagement is not within the scope of Congress's intent for 10(b)); *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 53 (2d Cir. 1995) (same)(citation omitted);; *In re Citigroup, Inc.*, 330 F.Supp.2d 367, 375 (S.D.N.Y. 2004) ("Securities laws were not designed to provide an umbrella cause of action for review of management practices . . . [A]llegations of mismanagement, even where a plaintiff claims that it would not have invested in an entity had it known of the management issues, are insufficient to support a securities fraud claim under section 10(b).").

### A.      Plaintiffs Disclaimed Reliance on External Representations.

It is well-settled that a party who specifically and contractually disclaims reliance upon a representation cannot, in a subsequent action for fraud, assert that "it was fraudulently induced to enter into the contract by the very representation it has disclaimed reliance upon." *Harsco*, 91 F.3d at 345; *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 575-76 (2d Cir. 2005); *Banque Arabe et Internationale D'Investissement v. Md. Int'l Bank*, 57 F.3d 146, 156-57 (2d Cir. 1995); *Grumman Allied Indus. Inc. v. Rohr Indus. Inc.*, 748 F.2d 729, 730 (2d Cir. 1984) (fraud action could not be maintained where plaintiff contractually disclaimed reliance on the representation at issue); *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320 (1959).  In *Danann*, the disclaimer stated the contract "*is entered into after full investigation, neither party relying upon any statement or representation* not embodied in this contract, made by the other." 5 N.Y.2d at 318.  The court concluded:

> [P]laintiff has in the plainest language announced and stipulated that it is not relying on any representations as to the very matter as to which it now claims it was defrauded.  Such a specific disclaimer destroys the allegations in plaintiff's complaint that the agreement was executed in reliance upon these contrary oral representations.

*Id*. at 320-21.[5]  *Danann* and its progeny further support the well-settled principle that "where the parties to an agreement have expressly allocated risks, the judiciary shall not intrude into their contractual relationship."  *Grumman Allied Indus., Inc.*, 748 F.2d at 735.  To hold otherwise would enable signatories to contracts to misrepresent their true intentions by signing a statement disclaiming reliance, waiting to determine if they are pleased with their bargain, and if not, complaining that they were misled by the very statements they disclaimed reliance upon earlier.

---

[5]  *Danann* has been cited approximately 222 times for this principle, and the rule of *Danann* has been cited with approval by both Williston and Corbin.  *See Grumman Allied Indus., Inc.*, 748 F.2d at 735 n.12 (citing 5 S. Williston, *A Treatise on The Law of Contracts* § 811 at 893 (3d ed. 1961) ("where the written agreement stated that no representations not contained in the contract had been made and that the party had conducted his own investigation, he was precluded from alleging and proving the falsity of certain representations included therein"); 3 A. Corbin, *Contracts* § 578 at 404 (2d ed. 1960)).

*Danann*, 5 N.Y.2d at 323 ("[P]laintiff made a representation in the contract that it was not relying on specific representations not embodied in the contract, while, it now asserts, it was in fact relying on such oral representations.  Plaintiff admits then that it is guilty of deliberately misrepresenting to the seller its true intention.").

Here, Plaintiffs are attempting to avoid their contract in the same manner the court rejected in *Danann*.  Plaintiffs seek to rescind their investments by claiming they are not sophisticated investors and that they relied on allegedly fraudulent oral representations made by Defendants.[6]  The language in the Subscription Agreements clearly and specifically forecloses Plaintiffs' ability to rely on any such alleged external statements or representations.  (Brennan Aff. Exh. A at 2 ¶ 3; Exh. B at 2 ¶ 3.)[7]  Plaintiffs should not be permitted to misrepresent their true intentions and then use that misrepresentation to their advantage in a claim for damages.  "To hold otherwise would be to say that it is impossible for two businessmen . . . to agree that the buyer is not buying in reliance on any representations of the seller as to a particular fact."  *Danann Realty Corp.*, 5 N.Y. 2d at 323.

In this case, as in *San Diego,* the Subscription Agreements reflect a clear manifestation of the parties' intent to disclaim any representations external to the Memoranda.  Despite their assertions now to the contrary, Plaintiffs certified in their Subscription Agreements

---

[6]  BPL's fraud claim is even further precluded by the disclaimer provision.  BPL invested in Truk.  The Memorandum for Truk clearly states that no one is authorized to provide information beyond the Memorandum, and that no person is authorized to provide representations about the content of the Memorandum. (Brennan Aff. Exh. B at i.)  To the extent BPL relied on the Fratis' retelling of an alleged representation from a Fund employee, BPL is doubly precluded from claiming reliance.

[7]  Plaintiffs had ample opportunity to protect themselves by requesting that any external representations be added to the documents.  A party, who has notice of undocumented material facts, but proceeds with the transaction without documenting those facts in the agreement "may truly be said to have willingly accepted the business risk."  *Emergent Capital Inv. Mgmt., LLC v. Stonepath Gr.*, 343 F.3d 189, 195 (2d Cir. 2003) (sophisticated investor who represented that he had knowledge and experience did not reasonably rely where he failed to protect himself by insisting the stock purchase agreement include external representations) (quoting *Rodus v. Manitaras*, 552 N.Y.S.2d 618 (App. Div. 1990)).

-14-

that they are sophisticated investors.  BPL is a large financial institution, advised by experts familiar with investing.  The Fratis, though individuals, also are sophisticated investors, and would be deemed so even had they not represented themselves as such.  *See Wells Bros. v. United States*, 254 U.S. 83, 87 (1920) (men involved in $1 million contracts "are neither unsophisticated nor careless").  These investors signed documents representing that they read the Memoranda and Fund Agreements, that they accepted the terms of those documents, that they had the opportunity to ask questions of management, and that they did not rely on any representation not included in the Memorandum in deciding to invest.[8]  Plaintiffs cannot now claim otherwise, and their express disclaimers preclude, as a matter of law, their ability to allege the element of reasonable reliance necessary to their fraud-based claims.

### B.   Plaintiffs Cannot Allege a Fraud by Omission Because Defendants had No Duty to Disclose.

Under both federal securities and New York common law, there can be no claim for fraud by omission without a duty to disclose.  *See, e.g., In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993) ("an omission is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts.") (citing *Basic Inc. v. Levinson,* 485 U.S. 224, 239 n.17 (1988); *Glazer v. Formica Corp.,* 964 F.2d 149, 157 (2d Cir.1992)).  Furthermore, the general rule is that parties in an arm's length business transaction have no duty to disclose information.  *See, e.g., Commander Terminals, LLC v. Commander Oil Corp.*, 897 N.Y.S.2d 151, 154 (App. Div. 2010) ("New York adheres to the doctrine of caveat emptor" and does not, absent concealment, impose a duty of disclosure on the vendor in an arm's length transaction).  The rule in New York has two narrow exceptions:  (i) where the parties owe fiduciary duties; and (ii) where one party has special or superior knowledge not readily available

---

[8]  Plaintiffs' allegations that they did not read the Memoranda prior to signing the Subscription Agreements cannot be credited in light of their written representations to the contrary.  (Brennan Aff. Exh. A at 1; Exh. B at 1.)  "It would be unrealistic to ascribe to plaintiffs' officers such incompetence that they did not understand what they read and signed . . . [W]here a person has read and understood the disclaimer of representation clause, he is bound by it."  *Danann Realty Corp.*, 5 N.Y.2d at 322 (citing *Ernst Iron Works v. Duralith Corp.*, 270 N.Y. 165, 171 (1936)).

to the other party, and knows that the other party is acting on the basis of mistaken knowledge. *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1484-85 (2d Cir. 1995); *Grumman,* 748 F.2d at 738-39.  Neither of these narrow exceptions applies in this case.

    No matter the portrayal in the amended complaint, this dispute involves a business transaction between sophisticated parties.[9]  As a result, the law does not impose a disclosure obligation that could give rise to a claim for omission under the first narrow exception to the general rule of "no action for omission."  Plaintiffs also have not alleged (and the facts would not support) a claim that the second narrow exception applies, because neither of the two requisite elements exist.  For the second exception to apply, *first*, the information allegedly not disclosed must be within the special knowledge of one party and not readily available to the other. *Grumman Allied Industs. Inc.*, 748 F.2d at 738-39.  A matter is not considered within a party's special knowledge when the relevant information "was either a matter of public record, was not pursued by plaintiffs, or was disclosed to the plaintiffs at least in part."  *Id.* at 739 (citation omitted).  Where the facts are not peculiarly within one party's knowledge and "the other party has the means available to him of knowing, by the exercise of ordinary intelligence, the truth . . . of the representation, he must make use of those means or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations."  *Danann Realty Corp.*, 5 N.Y. 2d. at 322 (citations omitted); *see Grumman*, 748 F.2d at 738 ("Where sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance.").

    Here, Plaintiffs complain that they were not informed of fees and inter-fund

---

[9]  The Agreements in this case do not create fiduciary duties from Defendants to Plaintiffs. Where the parties to an arm's length agreement do not contract for fiduciary duties, courts should not read such duties into the agreement.  *EBC I, Inc. v. Goldman Sachs & Co.*, 5 N.Y.2d 11, 19-20 (2005) ("Generally, where parties have entered into a contract, courts look to that agreement to discover the nexus of the parties' relationship . . . [i]f the parties do not create their own relationship of higher trust, courts should not ordinarily transport them to the higher realm of relationship and fashion the stricter duty for them.") (citations omitted).

transfers.  These claims are without merit because much of this information was readily available and explicitly laid out in the Agreements.  (*See* Brennan Aff. Exh. A at 6 ¶ 18; Exh. B at 5 ¶ 18; Exh. C at 2, 3, 32-33; Exh. E at 3, 26.)  Any other allegedly omitted information was readily available to Plaintiffs through their contractual diligence access to the Investment Managers.  Thus, Plaintiffs could have obtained, by the exercise of "ordinary intelligence," all of the information they now claim was omitted.[10]

In addition, the broad contractual diligence access, as well as Plaintiffs' various signed disclaimer provisions, as a matter of law foreclose any allegation that Defendants were aware that Plaintiffs were acting on a mistaken belief – the second requisite element of an omission claim under the so-called "special knowledge exception."  As a result, Plaintiffs cannot base their fraud allegations on any alleged omission by Defendants.[11]

---

[10]  Plaintiffs also allege Defendants' purported broker-dealer activity as a basis of their fraud claims.  However, Plaintiffs have not sufficiently alleged (because they cannot) that Defendants acted as broker-dealers during the relevant time period, *i.e.*, at or after the time of Plaintiffs' investments.  All such allegations are made "on information and belief" and must be discounted because they lack any – let alone the requisite – particularity.  In any event, Defendants had no duty to disclose, nor is it logically feasible to disclose, activities in which they were not engaged.  To the extent Plaintiffs base their fraud claims on Defendants' alleged failure to disclose an SEC investigation into broker-dealer activities in or before 2005 that was pending at the time of Plaintiffs' investments, Plaintiffs had the opportunity to ask about the existence of any regulatory or governmental inquiries or investigations, and in the absence of such question, Defendants had no duty to disclose any such inquiry.  "The law does not impose a duty to disclose uncharged, unadjudicated wrongdoing or mismanagement."  *Ciresi v. Citicorp*, 782 F. Supp. 819, 823 (S.D.N.Y. 1991) (citing *United States v. Matthews*, 787 F.2d 38 (2d Cir. 1986); *GAF Corp. v. Heyman*, 724 F.2d 727 (2d Cir. 1983); *Maldonado v. Flynn*, 597 F.2d 789 (2d Cir. 1979); *Mgmt. Assistance, Inc. v. Edelman*, 584 F. Supp. 1021 (S.D.N.Y. 1984)).

[11]  Since Plaintiffs' fraud claims cannot be sustained, their claim to pierce the corporate veil (Count IX) also must be dismissed.  Under New York and federal law, there is no separate cause of action for piercing the corporate veil; rather it is a remedy to rectify a fraud committed by those who cloak themselves under the guise of corporate powers.  *See, e.g.*, *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997).

POINT II

## PLAINTIFFS FAIL TO ALLEGE THE LOSS REQUIRED TO SUSTAIN THEIR FRAUD-BASED CLAIMS.

Even if Plaintiffs' fraud-based claims were not already precluded as a matter of law for lack of reliance (and they are), they still would fail because Plaintiffs cannot articulate the requisite element of loss. Loss is necessary for Plaintiffs to recover in actions for fraud, fraudulent inducement, and under Rule 10(b)(5).[12] Although loss is an essential element to all of Plaintiffs' fraud based claims, Section 28(a) of the '34 Act in particular limits recovery under 10(b) to actual losses suffered. 15 U.S.C. §78(bb)(a) ("no person permitted to maintain a suit for damages under the provisions of this chapter shall recover . . . a total amount in excess of his actual damages.").[13] Hence a plaintiff cannot recover more than his or her actual, or "out of pocket" loss. *See, e.g., Green,* 406 F.2d at 302 (limiting recovery to actual damages).

Plaintiffs' amended complaint does not allege *any* actual out-of-pocket losses. Indeed, Plaintiffs concede that at the time of their requested redemption, the Fratis' initial investment had grown in value. (Am. Compl. ¶ 54.) Instead, the amended complaint seeks $3,500,000 in "damages" – these "damages," however, do not reflect economic loss, but rather

---

[12] *See, e.g.,* 15 U.S.C. §78u-4(b)(4); *Stoneridge Inv. Partners, LLC*, 552 U.S. at 157 (In a 10(b) action plaintiff must show economic loss); *Millowitz v. Citigroup Global Mkts., Inc.*, 544 F.3d 474, 478 n.1 (2d Cir. 2008) (10b-5 action requires economic loss); *B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 480 (S.D.N.Y. 2010) (fraud and intentional misrepresentation require showing of damages).

[13] The limitation to actual damages also precludes Plaintiffs' claims for punitive damages under Rule 10(b)(5). *Green v. Wolf Corp.*, 406 F.2d 291, 303 (2d Cir. 1968) (concluding "punitive damages are not authorized in private actions under 10(b) and Rule 10b-5"); *Komanoff v. Mabon, Nugent & Co.*, 884 F. Supp. 848, 861 (S.D.N.Y. 1995) (an award for punitive damages is not permissible for 10(b)). Likewise, Plaintiffs cannot claim punitive damages for common law fraud because they cannot allege a public harm. Under New York law, where a plaintiff's fraud claims arise from a contractual relationship between the parties, the plaintiff must show that the fraud is aimed at the general public, is gross, and "involves high moral culpability" to establish a claim for punitive damages. *See, e.g., Mayline Enters, Inc. v. Milea Truck Sales Corp.*, 641 F. Supp. 2d 304, 311-12 (S.D.N.Y. 2009) ("Where the parties are in a contractual relationship, courts have allowed punitive damages for fraud only where the additional damages are 'necessary to vindicate a public right.'") (citation omitted).

represent an impermissible attempt to rescind Plaintiffs' initial investments in the Funds. Without a showing of actual loss, however, Plaintiffs cannot maintain legal actions for fraud or fraudulent inducement, or for recovery under Section 10(b).

## POINT III

### PLAINTIFFS FAIL TO MEET THE HEIGHTENED PLEADING STANDARDS FOR THEIR CLAIMS OF COMMON LAW FRAUD AND UNDER RULE 10b-5

In addition to its substantive failures, Plaintiffs' amended complaint falls woefully short of meeting the heightened pleading standards required under Federal Rule of Civil Procedure 9(b) and the PSLRA.   "In alleging fraud or mistake a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  To satisfy Rule 9(b), a complaint must:  "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polnar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).  The PSLRA requires a plaintiff to meet a very similar heightened pleading standard.   When the plaintiff's 10b-5 claim involves misleading statements or omissions, the plaintiff must specify each allegedly misleading statement, explain why the statement is misleading, and, *if the allegation is based upon information and belief, the plaintiff must state with particularity all facts forming the basis of that belief*.  15 U.S.C. § 78u-4(b)(1); *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007); *Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw*, 612 F. Supp. 267, 275 (S.D.N.Y. 2009); *In re Scholastic Corp. Secs. Litig.*, 252 F.3d 63, 69-70 (2d Cir. 2001).  In addition, where – as here – the complaint alleges fraud against multiple defendants, it should identify each defendant's role in the fraud.  *See e.g.*, *Mills,* 12 F.3d at 1175; *Seippel v. Sidley, Austin, Brown & Wood, LLP*, 399 F. Supp.2d 283, 288 (S.D.N.Y. 2005).

Moreover, to protect defendants against the threat of strike suits, the complaint

must allege facts that give rise to a "strong inference" of fraudulent intent.  *Seippel*, 399 F. Supp.
2d at 288.  *See also,* 15 U.S.C. § 78u-4(b)(2) (complaint must "state with particularity facts
giving rise to a strong inference that the defendant acted with the required state of mind"
regarding each act or omission); *S. Cherry St., LLC v. Hennessee Group LLC*, 573 F.3d 98, 111
(2d Cir. 2009) (A "strong inference" "must be more than merely plausible or reasonable -- it
*must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."*)
(quoting *Tellabs, Inc.*, 551 U.S. at 314).   A plaintiff may show intent by establishing the
defendant has a motive and opportunity to defraud.  *Schmidt v. Fleet Bank*, Nos. 96 Civ. 5030
(AGS); 96 Civ. 7836 (AGS); 96 Civ. 9705 (AGS); 96 Civ. 9706 (AGS); 1998 U.S. Dist. WL
47827, at *6 (S.D.N.Y. Feb. 4, 1998).   To show motive, however, a plaintiff must show "a
benefit to the defendant that goes ***beyond*** 'the receipt of normal compensation for professional
services rendered,'" and that the defendant acted in his economic self-interest.  *See id*. (quoting
*Friedman v. AZ World Nurseries*, 730 F. Supp. 521, 532 (S.D.N.Y. 1990); *aff'd sub nom, Clark
v. AZ World Nurseries*, 927 F.2d 594 (2d Cir. 1991)); *see Acito v. IMCERA Group.*, 47 F.3d 47,
54 (2d Cir. 1995) ("[I]ncentive compensation can hardly be the basis on which an allegation of
fraud is predicated.") (citations omitted).

Plaintiffs' amended complaint is replete with conclusory allegations of fraud, but
it is devoid of particularity.  Plaintiffs allege generally that Defendants were fraudulent in their
transfers and management of the Funds, but do not allege any specifics, often pleading "upon
information and belief," but ***without a single fact to support the basis for the supposed belief***.[14]

---

[14]  *See, e.g.*, (Am. Compl. ¶ 37) ("Not only did this particular structure of the various entities
help Saltzstein and Fein avoid having to be accountable to anyone, upon information and belief,
the structure was intentionally set up so as to enable Saltzstein and Fein to take fees (and other
monies) from the fund in their sole discretion and without any accountability."); (Am. Compl. ¶
38;) ("Upon information and belief, Saltzstein and Fein (through RAM) set up the same secretive
structure as to the lack of accountability and multiple/excessive fees with regard to the Truk
Fund.  That is, Saltzstein and Fein acted as managers of the Truk Fund and are the principals of
Atoll Asset Management (Truk Fund's "Investment Manager" (such entity, upon information
and belief, is also not registered with the SEC)) . . .") (Am. Compl. ¶ 43) ("Upon information
and belief, in addition to taking multiple fees cloaked under the guise of separate entities (all

Plaintiffs' conclusory and speculative statements that Defendants acted fraudulently do not make it so, and are insufficient to support a claim.  Furthermore, the amended complaint does not come close to alleging the "strong inference" of scienter that the PSLRA and Rule 9(b) require; in fact, it alleges none beyond the legally insufficient purported motive of economic gain.  These pleading deficiencies alone provide an additional and independent basis on which all of Plaintiffs' fraud-based claims should be dismissed.

## POINT IV

### PLAINTIFFS' STATUTORY RESCISSION CLAIM MUST BE DISMISSED AS PLAINTIFFS CANNOT ALLEGE THAT THEIR AGREEMENTS ARE FACIALLY UNLAWFUL.

Plaintiffs' claim for rescission under Section 29(b) of the '34 Act fails as Plaintiffs do not, and cannot, allege that the contracts to which they are parties could not lawfully be performed.  Section 29(b) of the '34 Act only permits rescission of a contract if the contract itself is patently unlawful, *i.e.* the contract cannot possibly be performed in a lawful way.  *See Zerman v. Jacobs*, 510 F.Supp. 132, 135 (S.D.N.Y. 1981).  *See also Slomiak v. Bear Stearns & Co.*, 597 F.Supp. 676, 681 (S.D.N.Y. 1984).  A plaintiff invoking Section 29(b) – to the extent a private party can invoke 29(b)[15] – must show that such patent unlawfulness results from "an

---

controlled and/or owned by Saltzstein and Fein), Saltzstein and Fein knowingly and intentionally took "incentive fees" based on artificially inflated unrealized earnings.")  *See also, e.g.,* (Am. Compl. ¶¶ 36, 37, 38, 41, 43, 44, 51, 58, 65, 66, 73, 74, 92, and 93.)

[15]   The Second Circuit itself has "yet to address whether an alleged violation of §15(a)(1) can form the predicate for a rescission action under §29(b)."  *Boguslavsky v. Kaplan*, 159 F.3d 715, 722 (2d Cir. 1998).  Defendants submit it cannot.  *See Pompano – Windy City Partners v. Bear Stearns & Co.*, 794 F. Supp. 1265, 1288-89 (S.D.N.Y. 1992) (dismissing 29(b) claim where plaintiffs: (i) could not state a claim for alleged predicate violations of Sections 12(1) & (2) of the Securities Act of 1933; and (ii) failed to show they were within the class of persons Section 12 sought to protect).  Here, *first*, there is no private right of action for the alleged underlying violation of 15(a).  *See, e.g.*, *Cohen v. Citibank*, 1997 U.S. Dist. WL 88378, at *1 (S.D.N.Y. 1997) ("Since [the Supreme Court's decision in *Cort v.*] Ash, no court has found a private right of action exists pursuant to section 15.") (citations omitted).  *Second*, Plaintiffs fail to allege they are "one of the class for whom *especial* benefit" Section 15 was enacted.  *Goodman v. Shearson Lehman Bros., Inc.*, 698 F. Supp. 1078, 1086 (S.D.N.Y. 1988) (citations omitted).

underlying violation of the substantive provisions of the securities laws." *Pompano-Windy City Partners,* 794 F. Supp. at 1288.  Furthermore, the Second Circuit has held that when a securities claim sounds in fraud, the plaintiff's pleadings must be dismissed if the claim does not meet the PSLRA's and Federal Rule of Civil Procedure 9(b)'s heighted "pleading with particularity" requirement.  *See Rombach v. Chang*, 355 F.3d 164, 170-73 (2d Cir. 2004).  A claim sounds in fraud when, as here, "although not an essential element of the claim, the plaintiff alleges fraud as an integral part of the conduct giving rise to the claim."  *Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*, 341 F.Supp.2d 258, 269 (S.D.N.Y. 2004).

Plaintiffs claim that the Agreements must be rescinded, as "Defendants" unlawfully failed to register as broker-dealers under Section 15(a) of the '34 Act.  Despite their blanket allegations, there are only two Defendants with which the Fratis and BPL are in privity: Shelter and Truk.  As a result, even assuming Plaintiffs could maintain a private right of action, and could demonstrate the patent unlawfulness of a contract to be rescinded, such supposedly unlawful contract would have to be each Plaintiff's Subscription Agreement.  However, Plaintiffs have not – and cannot – allege that the contracts by which Plaintiffs invested in the Funds, and which set forth the investment objectives and activities of the Funds, could not possibly be performed lawfully.  If that were true, the entire alternative investment industry would cease to exist.  More specifically, Plaintiffs have failed to allege – again, because they cannot, and certainly not with the requisite specificity – that hedge funds are required to register as broker-dealers.  They are not, and Plaintiffs' claim to the contrary should be dismissed.[16]

---

[16]  As Plaintiffs' federal claims under 10(b) and 29(b) fail, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims and dismiss the complaint in its entirety.  Despite Plaintiffs' assertion to the contrary, there is no independent basis for federal subject matter jurisdiction, as no diversity exists under 28 U.S.C. § 1332(a) (requiring a dispute to be between citizens of different States or a citizen of a foreign state and a citizen of the United States).  "A case falls within the federal district court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same State."  *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (U.S. 1998).  In addition, diversity jurisdiction does not exist when a plaintiff and a defendant are both aliens, even if they are citizens of different nations.  *See, e.g., Univ. Licensing*

## POINT V

## PLAINTIFFS LACK STANDING TO ASSERT CLAIMS FOR BREACH OF FIDUCIARY DUTY, UNJUST ENRICHMENT, AND DECLARATORY JUDGMENT.

Like in *San Diego,* Plaintiffs' attempts to bring individualized claims for breach of fiduciary duty, unjust enrichment, and declaratory judgment in this case fail as a matter of law for lack of standing.  To the extent such claims exist, because the alleged resulting injuries would be born equally by all the Funds' investors, the claims belong to and must be brought by, or derivatively on behalf of, Truk and/or Shelter.[17]

In this case, Plaintiffs, as investors in the Funds, are like shareholders in a corporation.  A corporate officer or director generally owes a fiduciary duty only to the corporation over which he exercises management authority.  A breach of fiduciary duty claim arising out of injuries to the corporation only can be brought by the corporation itself.  A shareholder or investor cannot maintain such a suit, because any injury suffered by plaintiff is

---

*Corp. v. Paolo Del Lungo*, 293 F.3d 579, 580-82 (2d Cir. 2002).  Of importance here, the citizenship of a Limited Liability Company ("LLC") or Limited Partnership ("LP") is based on the citizenship of each of its members or partners.  *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990) (for purposes of diversity jurisdiction, limited partnerships have the citizenship of each of their general and limited partners); *Occidental Hotels Mgmt. B.V. v. Westbrook Allegro L.L.C.*, 2009 U.S. Dist. WL 2482157, *1 (S.D.N.Y. Aug. 12, 2009) (in determining citizenship, the "court looks to the citizenship of the members of a limited liability company and the members of a limited partnership").  Here, Plaintiffs' complaint fails to plead the citizenship of any of the members or partners of the Defendant LLCs or LPs.  (Am. Compl. ¶¶ 5-11.)  For this reason alone, the complaint lacks a basis for diversity jurisdiction.  Beyond the facial pleading deficiency, the Declaration of Michael Fein submitted herewith demonstrates that no diversity exists.  The Fratis are Florida citizens, and at least one other member of Shelter is a Florida citizen. (Am. Compl. ¶ 1; Declaration of Michael E. Fein, dated June 17, 2010 ¶ 3.)  Similarly, both BPL and at least one of Truk's members are aliens.  (Am. Compl. ¶ 2; Declaration of Michael E. Fein ¶ 2.)  Therefore, complete diversity does not exist and Plaintiffs' state law claims lack an independent basis on which to invoke federal subject matter jurisdiction.

[17]  Plaintiffs' claims for breach of fiduciary duty and unjust enrichment also are precluded by The Martin Act (N.Y. Gen. Bus. Law § 352) which "preempts, at least, the following common law claims when they are predicated on the purchase or sale of securities within or from New York:  negligence, breach of fiduciary duty, negligent misrepresentation, and unjust enrichment." *Ashland v. Morgan Stanley*, No. 09-Civ.-5415(RPP), 2010 U.S. Dist. WL 1253932, *16 (S.D.N.Y. Mar. 30, 2010) (citations omitted).

derivative of the injury to the corporation, not personal. *See, e.g.*, *Druck Corp. v. Macro Fund Ltd.*, 290 Fed. Appx. 441, 444 (2d Cir. 2008). *See also San Diego,* 2010 U.S. Dist. WL 1010012, at *19-21 (holding under Delaware law that a breach of fiduciary duty for fund mismanagement is derivative in nature and the action belongs to the fund, not the individual shareholder). As such, Plaintiffs lack standing to assert a breach of fiduciary duty claim relating to the management of the Funds.

Likewise, if Saltzstein or Fein unjustly profited from their management of the Funds, all investors in the Funds would be equally harmed. As a result, an unjust enrichment claim, as Plaintiffs asserted, also would belong to the Funds and cannot be maintained by their individual investors. *See, e.g.*, *ABF Capital Mgmt.v. Askin Capital Mgmt., L.P.*, 957 F. Supp. 1308, 1333-34 (S.D.N.Y. 1997). Plaintiffs thus lack standing to maintain their purported unjust enrichment cause of action, and the claim should be dismissed as a matter of law.[18]

Finally, Plaintiffs do not have standing to assert a declaratory judgment claim with respect to the indemnification provision, because the indemnification provision defines a contractual obligation and right between the Funds and, *inter alia*, the Managing Members. Any claim that the Funds improperly indemnified Defendants would belong to the Funds, which – under Plaintiffs' theory – suffered the loss arising from making the allegedly improper payments. Plaintiffs cannot maintain this derivative cause of action, and their claim for Declaratory Judgment also should be dismissed for lack of standing. *See, e.g., Druck Corp.*, 290 Fed. Appx. at 443; *In re Ionosphere Clubs, Inc.*, 17 F.3d 600, 604 (2d Cir. 1994); *Aetna Cas. & Sur. Co. v. Namrod Dev. Corp.*, 140 B.R. 56, 63-64 (S.D.N.Y. 1992); *New Castle Siding Co. v. Wolfson*, 97 A.D.2d 501, 501-02 (N.Y. App. Div. 1983).

---

[18]  Plaintiffs' claim for unjust enrichment also fails because a valid and enforceable written contract governs and explains the disputed fee structure. (*See* Brennan Aff. Exh. A at 6 ¶ 18; Exh. B at 5 ¶ 18; Exh. C at 2, 3, 32-33; Exh. D at A-9 ¶ 3.7, A-15 ¶ 4.1.2; Exh. E at 3, 27; Exh. F at 8 ¶ 4.1.2.)  *See Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 572 (2005) (Dismissing plaintiff's claim for unjust enrichment based on fees the defendant earned, because the fee in dispute was governed by an engagement letter executed between the parties). In fact, as Exh. C of their amended complaint suggests, Plaintiffs even negotiated their own fee structure.

## POINT VI

## PLAINTIFFS FAIL TO ADEQUATELY PLEAD A CAUSE OF ACTION FOR BREACH OF CONTRACT.

Plaintiffs' threadbare allegations in Count Ten of their amended complaint fail to even meet the most basic notice pleading requirements. "The claimant must allege the specific provisions of the contract upon which the breach of contract claim is based. . . . A claim for breach of contract cannot be sustained simply by a conclusory statement that the accused breached a contract." *See, e.g.*, *Schupak Gr., Inc. v. Travelers Cas. & Surety Co.*, No. 10 Civ. 209 (SAS), 2010 U.S. Dist. WL 1487737 *4 (S.D.N.Y. Apr. 13, 2010). Here, Defendants should not be required to create and refute what they believe to be Plaintiffs' arguments. *See Nordic Bank PLC v. Trend Gr., Ltd.*, 619 F.Supp. 542, 562 (S.D.N.Y. 1985) (Dismissing breach of contract claim for lack of specificity as "[l]itigation should not be a guessing game"). Plaintiffs make the conclusory statement that the Memorandum was breached. But Plaintiffs fail to give any indicia of what provision supposedly was breached, when that alleged breach occurred, which Defendant allegedly breached the Memorandum, or how that supposed breach occurred. Instead, claimants' "breach of contract" allegation specifies nothing at all, and should be dismissed.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court dismiss Plaintiffs' amended complaint in its entirety with prejudice.

Dated:   New York, New York
         July 21, 2010

                                    Respectfully submitted,
                                    **LOWENSTEIN SANDLER PC**

                                    By:   /s  Kevin M. Brennan_____

Sheila A, Sadighi, Esq. (*pro hac vice*)
Kevin M. Brennan (KB 3184)
1251 Avenue of the Americas
New York, New York 10020
Tel.: 212.262.6700
Fax: 212.262.7402
-and-
65 Livingston Avenue
Roseland, New Jersey  07068
Tel.: 973.597.2500
Fax: 973.597.2400
kbrennan@lowenstein.com
  *Attorneys for Defendants*
  *Stephen E. Saltzstein ("Saltzstein"),*
  *Michael E. Fein; RAM Capital*
  *Resources, LLC; Shelter Island*
  *Opportunity Fund, LLC; Shelter*
  *Island GP, LLC; Midway*
  *Management Partners, LLC; Truk*
  *International Fund, LP; Truk*
  *Opportunity Fund, LLC; and Atoll*
  *Asset Management, LLC*