UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X
MARIO FRATI, STACY FRATI and       :
BANCO POPOLARE (Luxembourg) S.A.   :  Case No. 10 Civ. 3255
                                    :
                    Plaintiffs,     :
                                    :
           -v-                      :
                                    :
STEPHEN E. SALTZSTEIN, *et al.*     :
                                    :
                    Defendants.     :
                                    :
------------------------------------------------------- :
                                    X

---

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

---

**LOWENSTEIN SANDLER PC**
Sheila A. Sadighi, Esq. (pro hac vice)
Kevin M. Brennan, Esq. (KB 3184)
1251 Avenue of the Americas
New York, New York 10020
212-262-6700
Attorneys for Defendants

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ...................................................................................................... ii

PELIMINARY STATEMENT ................................................................................................... 1

LEGAL ARGUMENT ................................................................................................................ 3

I.   PLAINTIFFS' FRAUD-BASED CLAIMS CANNOT BE SAVED. ............................... 3

II.  PLAINTIFFS' SECTION 29(B) CLAIM FAILS BECAUSE PLAINTIFFS
     CANNOT ALLEGE THAT THE AGREEMENTS CANNOT BE PERFORMED
     LEGALLY BY SHELTER AND TRUK. ........................................................................ 8

III. PLAINTIFFS' STATE LAW CLAIMS CANNOT SURVIVE A MOTION TO
     DISMISS. ......................................................................................................................... 9

CONCLUSION ......................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Pages**

**CASES**

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87, 105 (2d Cir. 2007)..................................................................................5

*Belin v. Weissler*
   No. 97-8787, 1998 WL 391114 (S.D.N.Y. July 14, 1998)....................................4, 5

*In re Citigroup, Inc. Sec. Litig.*,
   330 F. Supp. 2d 367 (S.D.N.Y. 2004).........................................................................7

*Fadem v. Ford Motor Co.*,
   352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005)................................................................7

*Foun., Ventures, LLC v. F2G, Ltd.*
   No. 08-10066, 2010 WL 3187294 (S.D.N.Y. Aug. 11, 2010)..................................8

*Goodman Mfg. Co. v. Raytheon Co.*,
   No. 98-2774, 1999 WL 681382 (S.D.N.Y. Aug. 31, 1999)......................................3

*Harborview Master Fund, L.P. v. Lightpath Tech., Inc.*,
   601 F. Supp. 2d 537, 546-547 (S.D.N.Y. 2009) ........................................................6

*Int'l Audiotext Network, Inc. v. AT&T Co.*,
   62 F.3d 69 (2d Cir. 1995)...........................................................................................3

*Jacobson v. Peat, Marwick, Mitchell & Co.*,
   445 F. Supp. 518, 526 (S.D.N.Y.1977)......................................................................7

*Lazaro v. Good Samaritan Hosp.*,
   54 F. Supp. 2d 180, 184 (S.D.N.Y.1999) ..................................................................7

*Pompano-Windy City Partners, Ltd. v. Bear Stearns & Co.*,
   794 F. Supp. 1265 (S.D.N.Y. 1992)...........................................................................9

*Regional Properties, Inc. v. Financial & Real Estate Consulting Co.*,
   678 F.2d 552 (5th Cir. 1982) .....................................................................................8

*Sable v. Southmark/Envicon Capital Corp.*,
   819 F.Supp. 324, 334-335 (S.D.N.Y. 1993) ..............................................................6

*Salomon Smith Barney Mut. Fund Fees Litig.*,
   441 F. Supp. 2d 579, 594-97 (S.D.N.Y. 2006) .......................................................10

*San Diego County Employees Retirement Ass'n v. Maounis*,
   No. 07-2618, 2010 WL 1010012 (S.D.N.Y. Mar. 15, 2010) .................................................1, 5

*SEC v. Martino*,
   255 F. Supp. 2d 268, 283 (S.D.N.Y. 2003) ...........................................................................9

*In re Time Warner Inc. Sec. Litig.*,
   9 F.3d 259 (2d Cir. 1993) .......................................................................................................6

*United States v. Matthews*,
   787 F.2d 38 (2d Cir. 1986) .....................................................................................................6

*Zerman v. Jacobs*,
   510 F. Supp. 132, 135 (S.D.N.Y. 1981) .................................................................................8

**RULES**

Rule 9(b) ..............................................................................................................................................1

Rule 12(b)(6) .......................................................................................................................................1

Rule 12(b)(1) .......................................................................................................................................1

**STATUTES**

15 U.S.C. §78c(a)(4) ..........................................................................................................................9

Defendants respectfully submit this reply memorandum of law in support of their motion to dismiss Plaintiffs' amended complaint pursuant to Rules 12(b)(6), 9(b) and 12(b)(1) of the Federal Rules of Civil Procedure, for failure to state a claim and for lack of standing.[1]

## PRELIMINARY STATEMENT

The arguments in Plaintiffs' opposition to Defendants' motion to dismiss (the "Opposition Brief" or "Opp.") fly in the face of both reality and well-settled law. *First,* faced with their own express disclaimers of reliance, which preclude as a matter of law all of their misrepresentation claims, Plaintiffs argue that in a Rule 12(b)(6) context the clear and controlling documents should be ignored in favor of contrary allegations in the amended complaint. Plaintiffs are wrong. It is black letter law in the Second Circuit that allegations contradicted by the documents integral to the complaint *cannot* be credited. *Second,* confronted with *San Diego County Employees Retirement Ass'n v. Maounis*, No. 07-2618, 2010 WL 1010012 (S.D.N.Y. Mar. 15, 2010), a case on all fours in which virtually identical disclaimer language was held to bar identical claims, Plaintiffs incredibly assert that "the facts in San Diego are absolutely ***nothing*** like the facts here." (Opp. at p.10.) The assertion proves too much, and Plaintiffs' effort to distinguish themselves from the plaintiffs in *San Diego* based on an alleged lack of sophistication is belied by Plaintiffs' own written representations.

*Third,* Plaintiffs attempt to salvage an omission claim by attempting improperly to amend their complaint (for a second time) through their Opposition Brief to show that in March of 2009 the existence of an SEC investigation was disclosed to investors. The attempt fails. Plaintiffs offer zero support -- because there is none -- for their repeated bald assertion that Defendants' disclosure of the SEC investigation three months before it was resolved somehow constitutes an admission that an investigation was being pursued, was material, and legally had to be disclosed in 2007 before Plaintiffs made their investments. Nothing in Plaintiffs'

---

[1] Capitalized terms used but not defined herein are as defined in Defendants' Brief in Support of their Motion to Dismiss (the "Moving Brief").

-2-

(improper) arguments changes the law: at the time of Plaintiffs' investments, Saltzstein and Fein had no legal duty to disclose any investigation related to discontinued, unrelated and unadjudicated conduct.[2]

*Fourth,* Plaintiffs cannot rescue their second ill-fated attempt (the first being their voluntarily withdrawn RICO claims) to include a back-up jurisdictional hook to their fatally flawed 10(b) claims by invoking Section 29(b) of the '34 Act. Even if this were a case to which 29(b) was designed to apply (and it is not), Plaintiffs' claim still would not survive. There are no allegations in the amended complaint that could give rise to an inference that the acts contemplated by the Agreements -- *i.e.*, the investment of investor funds in an effort to generate returns -- could not legally be performed by the hedge funds with which Plaintiffs contracted.

*Fifth*, Plaintiffs' amended complaint, which sounds in fraud, falls far short of pleading fraud with requisite particularity, an additional and independent basis on which to dismiss Plaintiffs' 10(b) and 29(b) claims. *Sixth,* the amended complaint's failure to allege economic loss remains another additional and independent basis on which the fraud-based claims should be dismissed. Plaintiffs' alleged "loss" is summed up by their statement that they have a "reasonable belief that the remaining investment monies are gone." (Opp. at p.3, fn3.) However, Plaintiffs' purported belief that their continuing interests in the Funds are valued at zero -- even if it were alleged in the amended complaint and even if it were credible -- is not sufficient to allege an actual, out-of-pocket loss, let alone a loss causally connected to any alleged fraud.

*Seventh,* the fact that Plaintiffs were sufficiently sophisticated to negotiate below-market management and incentive fees does not convert clearly derivative claims for alleged breaches of fiduciary duty, unjust enrichment and declaratory judgment into legally cognizable individual claims. Even crediting Plaintiffs' argument, the difference between Plaintiffs and every other investor in the Funds is a difference of degree, not kind, of alleged harm. As a result,

---

[2] Moreover, Plaintiffs' attempts to paint Fein and Saltzstein as the second coming of Bernie Madoff ring hollow, since the SEC investigation alleged no fraud, but rather that a discontinued business model effectively triggered broker-dealer registration requirements.

Plaintiffs have no standing to maintain these claims on an individualized basis.

For the foregoing reasons, and others explained herein and in Defendants' Moving Brief, Plaintiffs' 10(b) and 29(b) claims cannot be sustained as a matter of law. With no viable federal claims, and no independent basis on which to invoke this Court's jurisdiction, Defendants respectfully request that the Court decline to exercise supplemental jurisdiction over what is *at best* a state law breach of contract case. Of course, for the reasons explained in Defendants' Moving Brief and herein, Plaintiffs' state law claims also are unsustainable as a matter of law. Should the Court reach those claims, Defendants respectfully submit that they too should be dismissed, and the amended complaint dismissed in its entirety.

## **LEGAL ARGUMENT**

### I.     **Plaintiffs' Fraud-Based Claims Cannot be Saved.**

Plaintiffs devote two pages of their Opposition Brief to bullet pointed allegations, which they claim Defendants improperly disregard "in favor of Defendants' version of the facts." (Opp. at 4-6.) However, well-settled law requires these flatly contradicted allegations to be disregarded, even in the context of a motion to dismiss. *See, e.g., Goodman Mfg. Co. v. Raytheon Co.*, No. 98-2774, 1999 WL 681382, at *4 (S.D.N.Y. Aug. 31, 1999) (To the extent the documents contradict factual allegations in the pleadings, the documents control) (citing *Int'l Audiotext Network, Inc. v. AT&T Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). Every single allegation (as well as unpled argument) relevant to Plaintiffs' asserted claims is contradicted and precluded as a matter of law by the Subscription Agreements that Plaintiffs signed prior to making their investments.[3] For example:

---

[3] Even crediting -- solely for purposes of this argument -- Plaintiffs' supposed damages theory, their purported "loss" is the total amount of their investments, which they claim they would not have invested but for Defendants' alleged fraudulent inducement. As a result, the only allegations relevant to, or that could be causally connected to, their claims are those alleged misstatements that *preceded* the investments. The numerous allegations of purported post-investment conduct not only are unfounded, but are chronologically and legally irrelevant.

| Plaintiffs' Allegations/Arguments | Plaintiffs' Representations in Agreements |
|---|---|
| "Mario and Stacy Frati … have never invested in a private placement or hedge fund prior to their investment in the Shelter Fund." (Opp. at p.4.)<br>"The fact that the Fratis are Accredited Investors … [does not mean] they have ever invested in a hedge fund or private placement." (Opp. at p.8, fn.12.)<br>"investing in the Shelter Fund was [the Frati's] very first investment in a private placement or hedge fund…" (Opp. at p.8.) | "**Subscriber affirms that: … Subscriber … is experienced in investments of this kind**" (Brennan Aff., Ex. A at 3 ¶8; B at 3, ¶8 (emphasis added).) |
| "In reliance solely on Saltzstein's and Fein's representations and omissions of fact, Plaintiffs invested an aggregate of $3.5 million with Defendants." (Opp. at p.5.)<br>"Mario and Stacy Frati agreed to invest because they trusted Saltzstein and Fein when they told them: …" (Opp. at p.9.)<br>"Mario Frati's mother invested (through Plaintiff BPL) based on these same representations. That was it!" (*Id.*) | "**In deciding to invest in the Fund, Subscriber has relied solely upon the information in the Memorandum and has not relied on oral representations or warranties.**" (Brennan Aff., Ex. A at 2, ¶3, B at 2, ¶3 (emphasis added).)<br>"**The Subscriber has been advised that no person is authorized to give any information or make any statement not contained in the Memorandum, and that any information or statement not contained therein must not be relied upon as having been authorized by the Fund.**" (*Id.* (emphasis added).) |
| "Saltzstein and Fein knew that Plaintiffs were investing in sole reliance on their untruthful representations and that Plaintiffs had not been given a private placement memorandum prior to their investment." (Opp. at p.5.)<br>"nor did [the Fratis] even receive the private placement memorandum prior to wiring the investment monies!" (Opp. at p.9.)[4] | "**Subscriber declares that he has carefully read, understands, and agrees to abide by the terms set forth in the Memorandum …**" (Brennan Aff., Ex. A at 1, ¶2; B at 1, ¶2 (emphasis added).) |

---

[4] Plaintiffs repeatedly argue in their Opposition Brief that they never received the Memorandum and, therefore, cannot be bound by those documents. This argument is unavailing. *First,* as noted above, Plaintiffs expressly represented that they *read* the Memorandum. *Second,* it is well established that where a party engages in a sophisticated transaction, has been put on notice of the existence of material facts or documents, and proceeds with the transaction without securing those documents, that party cannot complain that he is defrauded, as it is his own lack of "due care" which led to his alleged troubles. *See Belin v. Weissler,* No. 97-8787, 1998 WL 391114, at *6-7 (S.D.N.Y. July 14, 1998).

As in *San Diego,* Plaintiffs' express representations and disclaimers contained in the clear and unambiguous Agreements -- which, as a matter of law, trump the contradictory allegations set forth in Plaintiffs' amended complaint -- preclude their misrepresentation-based fraud claims. As a matter of law, Plaintiffs cannot allege the required element of justifiable reliance.[5]

Plaintiffs' argument that their disclaimers were too general to preclude their claims for fraud is without merit. The Agreements that govern the parties' relationships do not include a vague and general merger clause. Rather, the Agreements contain an express disclaimer of all representations external to those specifically set forth in the Memorandum. Such a disclaimer is sufficiently specific and clearly enforceable under New York law. For example, in *Belin*, the court found that the disclaimer, along with the plaintiff's representations in the subscription agreement that (a) he had reviewed the partnership agreement, (b) he was a sophisticated investor, and (c) the defendants had given the plaintiff the ability to obtain whatever additional information he required, was sufficiently specific to negate the element of reliance. 1998 WL 391114, at *8. The Agreements that Plaintiffs signed contained the *same* language held in *Belin* to preclude reliance on outside representations. (Brennan Aff., Ex. A at 1 ¶ 2; B at 1 ¶2 ("Subscriber confirms that the Managing Member has made available to Subscriber the opportunity to ask questions of, and receive answers from, the Managing Member concerning the terms and conditions of this offering, and to obtain any additional information which the Fund had in its possession or was able to acquire without unreasonable effort or

---

[5] The Fratis' attempt to distinguish themselves from the plaintiffs in *San Diego,* as well as their repeated assertions that they are not sophisticated investors and that their self-affirmed status as accredited investors does not imply sophistication, fall flat as a matter of law and fact. As the Second Circuit has stated, "[b]y engaging in these private placements of complex securities, [plaintiff] is clearly a sophisticated investor." *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 105 (2d Cir. 2007). Further, by signing the Subscription Agreement for Mario and Stacy Frati, Mario Frati affirmed, *inter alia,* that: "[the Fratis meet] the suitability requirements set forth in the Memorandum..." (Brennan Aff., Ex. A at 3, ¶8.) The Memorandum, in turn, provides that the "offering is designed for sophisticated investors . . . [who] have such knowledge and experience in financial and business matters that they are capable of evaluating the merits and risk of an investment in the Fund." (Brennan Aff., Ex. C at 5, E at 5.)

expense that was necessary to verify the accuracy of the information in the Memorandum.").)[6]

Plaintiffs' omission-based fraud claims fare no better. Plaintiffs' omission claims hang entirely on their argument that Defendants did not disclose in 2007, before Plaintiffs invested, the existence of an SEC investigation that was resolved in June of 2009 and in relation to which Fein and Saltzstein admitted no wrongdoing.[7] However, as set forth in Defendants' Moving Brief, (a) a party can be held liable for an omission only when the party "is subject to a duty to disclose the omitted facts," *see, e.g., In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993), and (b) there is no duty to disclose unadjudicated and uncharged conduct, *see, e.g., United States v. Matthews*, 787 F.2d 38, 49 (2d Cir. 1986) (holding under 14(a) of the '34 Act that defendant was under no duty to disclose in proxy statement that grand jury was

---

[6] The "totality of the circumstances" analysis promoted by Plaintiffs also militates in favor of enforcing Plaintiffs' express disclaimers to preclude their fraud claims. Plaintiffs held themselves out to be sophisticated (as well as accredited) investors. (Brennan Aff., Ex. A at 3, ¶8, B at 3, ¶8, C at 5, E at 5.) The investments were arms' length transactions, as evidenced by, *inter alia*, the Fratis' ability to negotiate reduced fees. (Am. Compl., Ex. C.) *See Harborview Master Fund, L.P. v. Lightpath Tech., Inc.*, 601 F. Supp. 2d 537, 546-547 (S.D.N.Y. 2009) (determining ability to waive reliance by examining bargaining power and pressure to invest). Plaintiffs had the ability -- and were encouraged in the Memorandum -- to consult with investment advisers or attorneys to determine if the investment was right for them. (Brennan Aff., Ex. C at 19, E at 15.) The Agreements are clear that Plaintiffs were disclaiming *all* outside representations. (Brennan Aff., Ex. A at 2 ¶ 3; B at 2 ¶ 3; C at i; E at i; D at 27; F at 20.) Even adopting Plaintiffs' argument that the Court must analyze the totality of the transaction, the facts, combined with the explicit language of the Agreements, show that Plaintiffs effectively disclaimed reliance on any and all representations not set forth in the Memorandum.

[7] Plaintiffs' other alleged omissions cannot give rise to an omission claim as a matter of law, as they were clearly and expressly disclosed in the Agreements which Plaintiffs represented they read and by which they agreed to be bound. Here, both the risks of an SEC investigation and the management structure of the Funds were clearly disclosed to Plaintiffs. Defendants disclosed to investors that there was a risk that the SEC could target "entities involved in PIPE transactions for investigation in the future." (Brennan Aff., Ex. C at 24-25.) Defendants also disclosed the fee structure, the ability of the Funds to loan money to other entities and the possibility of the suspension of withdrawals. (Brennan Aff., Ex. A at 6 ¶ 18; Ex. B at 5 ¶ 18; Ex. C at 2, 3, 10, 12, 32-34; Ex. E at 3, 4, 9, 13, 26-27.) A party cannot state a claim for omission regarding an issue which the memorandum discloses or about which it bespeaks caution. *See Sable v. Southmark/Envicon Capital Corp.*, 819 F. Supp. 324, 334-335 (S.D.N.Y. 1993).

investigating charges of bribery and tax evasion conspiracy); *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004) ("federal securities laws do not require a company to accuse itself of wrongdoing"). Unable to refute the law, Plaintiffs instead state, in repeated and wholly conclusory fashion, that the voluntary disclosure of the investigation in March 2009, three months before it was resolved, somehow constitutes an admission that an investigation was being pursued, was material and legally had to be disclosed in 2007.[8] Plaintiffs offer no support for this conclusion, because there is none. Simply, Plaintiffs cannot overcome the law already cited by Defendants which precludes Plaintiffs' omission-based claims.

Plaintiffs' arguments also cannot overcome the fact that the amended complaint fails to plead fraud with requisite particularity, or to plead an out-of-pocket loss, let alone a loss causally connected to the alleged fraud. Instead of addressing their failure to plead "actual damages," Plaintiffs attempt to side step the issue by arguing that Defendants have failed to provide audited financials. This argument, though, is irrelevant. In fact, Plaintiffs' Opposition Brief demonstrates that they do not even know if they have any damages.[9] Without a definitive

---

[8] The allegation that the investigation was disclosed in March 2009 was not in the amended complaint. Although Defendants have addressed the argument to demonstrate that, as a matter of law, there is no basis for an omission claim, it should be noted that this is only one of many improper attempts by Plaintiffs to amend their pleading (for a second time) by way of their Opposition Brief. (*See* Declaration of Kevin M. Brennan dated August 24, 2010, hereinafter "Aug. 24 Brennan Decl.," submitted herewith.) Defendants submit that, even if accepted, none of the allegations and arguments identified in the Aug. 24 Brennan Decl. could save Plaintiffs' claims. Nevertheless, because Plaintiffs failed to include these allegations in their amended complaint, they are irrelevant for purposes of determining whether a claim has been stated, and should be stricken, dismissed and/or ignored. *See, e.g., Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005) ("It is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs.") (citations omitted); *Lazaro v. Good Samaritan Hosp.*, 54 F. Supp. 2d 180, 184 (S.D.N.Y.1999) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss.") (citation omitted); *Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F. Supp. 518, 526 (S.D.N.Y.1977) ("[A] party is not entitled to amend his pleading through statements in his brief.").

[9] Indeed, in another impermissible (and futile) attempt to amend their complaint through their Opposition Brief, Plaintiffs acknowledge that they have received cash distributions in connection with their investment. (Opp. at p.3, fn.3) Even if Plaintiffs somehow ultimately were entitled to a judgment, any damages award would have to be continuously adjusted until all of the Funds'

realized loss, Plaintiffs' fraud based claims must be dismissed as speculative.

## II. Plaintiffs' Section 29(b) Claim Fails Because Plaintiffs Cannot Allege that the Agreements Cannot be Performed Legally by Shelter and Truk.

Plaintiffs' argument for rescission under Section 29(b) of the '34 Act appears to consist of two parts: (i) Plaintiffs say that RAM[10], Saltzstein and Fein are required to register as broker-dealers (without citation to any statute or case law) and (ii) Plaintiffs say that the Agreements and the Memorandum must be rescinded as RAM, Saltzstein and Fein are not registered as broker-dealers. Even taking *Regional Properties, Inc. v. Financial & Real Estate Consulting Co.*, 678 F.2d 552 (5th Cir. 1982) as the law of this Circuit -- and it is not[11] -- Plaintiffs miss a critical third step in their analysis. *Regional Properties* requires Plaintiffs to elicit what transactions violated the '34 Act or what parts of the contract Defendants cannot perform. *Id.* at 560-61. Therefore, Plaintiffs must allege what acts under the Agreements RAM, Saltzstein, and/or Fein could not legally perform because they are not registered as a broker-dealers.[12] As Plaintiffs have not alleged with any specificity that Defendants cannot perform any

---

assets are distributed to investors pro rata through the course of the orderly wind-down processes. Only at that point could Plaintiffs even know if they sustained a loss. Furthermore, even if Plaintiffs ultimately could show a loss (which the amended complaint fails to plead), they still could not show (nor have they pled) any requisite loss causation.

[10] Plaintiffs make numerous misrepresentations throughout their Opposition Brief, including on pages 16-17 where they state: "[i]n addition, the investments at issue were brokered through RAM . . ." Nowhere in the documents that Plaintiffs cite is there any reference to RAM brokering anything.

[11] The law of the Southern District is still that "only unlawful contracts may be rescinded, not unlawful transactions made pursuant to lawful contracts." *Zerman v. Jacobs*, 510 F. Supp. 132, 135 (S.D.N.Y. 1981).

[12] The simple reason for Plaintiffs' failure to take this third step is that Plaintiffs cannot show any act described within the Memorandum or actually committed by Defendants since 2006 in their association with Truk, Truk Opportunity and/or Shelter that would require Saltzstein, Fein, and/or RAM to be registered as broker-dealers. *See Found. Ventures, LLC v. F2G, Ltd.*, No. 08-10066, 2010 WL 3187294, at *7-8 (S.D.N.Y. Aug. 11, 2010) (examining allegations to determine broker-dealer activity in holding defendant could not show plaintiff acted as a broker-dealer under 15(a)(1) of the '34 Act). The '34 Act defines a broker as "any person engaged in

of their roles and responsibilities under the Agreements without committing "an underlying violation of the substantive provisions of the securities laws," Plaintiffs' claim fails as a matter of law. *Pompano-Windy City Partners, Ltd. v. Bear Stearns & Co.*, 794 F. Supp. 1265, 1288 (S.D.N.Y. 1992). As Plaintiffs concede in their opposition, not all hedge funds are required to register as broker-dealers. (Opp. at p.21.) This is one of those instances.[13]

Because Plaintiffs, as a matter of law, cannot state a claim under Section 10(b) or Section 29(b) of the '34 Act, there is no reason for this Court to retain jurisdiction over what has always been, at best, a contract dispute (among non-diverse parties) dressed up as a federal fraud claim. Defendants respectfully submit that Plaintiffs' '34 Act claims should be dismissed with prejudice, that the Court decline to exercise supplemental jurisdiction, and that Plaintiffs' amended complaint be dismissed in its entirety.

### III. Plaintiffs' State Law Claims Cannot Survive a Motion to Dismiss.

Plaintiffs argue that because the Fratis negotiated lower-than-market management and incentive fees, they are sufficiently distinct from all other investors in Shelter such that their claims for breach of fiduciary duty, unjust enrichment and declaratory judgment should be converted from derivative claims into individual claims. As a preliminary matter, Plaintiffs' argument does nothing for BPL. In any event, however, Plaintiffs' argument is without merit.

---

the business of effecting transactions in securities in the account of others." 15 U.S.C. §78c(a)(4). To determine whether a party is acting as a broker, the courts and the SEC examine a variety of factors including whether the party:

> 1) is an employee of the issuer; 2) received commission as opposed to a salary; 3) is selling or previously sold, the securities of other issuers; 4) is involved in negotiations between the issuer and the investor; 5) makes valuations as to the merits of the investment or gives advice; and 6) is an active rather than passive finder of investors.

*SEC v. Martino*, 255 F. Supp. 2d 268, 283 (S.D.N.Y. 2003). None of the activities described in the Memorandum or the Agreements implicate any of the tasks delineated above. In fact, ***the Memorandum expressly states that if a broker-dealer is needed, Defendants will subcontract that work to a registered broker-dealer.*** (Brennan Aff., Ex. C at 43-45; E at 37-38.)

[13] Plaintiffs also ignore Defendants' argument that Plaintiffs were not in contractual privity with RAM, Fein and/or Saltzstein as required by Section 29(b) of the '34 Act, an additional basis on which to dismiss the 29(b) claim.

To the extent that Plaintiffs even could allege damage relating to the fully disclosed fee structures, the fact that the Fratis negotiated lower percentages only would affect the degree -- not the kind -- of damages allegedly suffered by all investors indirectly through their participation in the Funds. To the extent (as Plaintiffs allege and Defendants deny) excessive fees were charged because they were calculated on the basis of inflated financial statements, then excessive fees were charged to all investors. Without a showing of a particularized type of harm experienced only by Plaintiffs, there is no direct harm and Plaintiffs lack standing to assert these derivative claims. *See, e.g., Salomon Smith Barney Mut. Fund Fees Litig.,* 441 F. Supp. 2d 579, 594-97 (S.D.N.Y. 2006) (Crotty, J.) (granting motion to dismiss claims under Section 36(b) of Investment Company Act as derivative, *inter alia*, over plaintiffs' argument that "the rates paid by the various classes of fund shares differ and that individual stockholders falling within the various classes of funds are thus 'directly, rather than indirectly, impacted by such payments'").

For the reasons set forth here and in Defendants' Moving Brief, Plaintiffs' remaining state law claims also cannot be sustained.

## CONCLUSION

For the reasons set forth herein and in Defendants' Moving Brief, Defendants respectfully request that Plaintiffs' amended complaint be dismissed.

Dated:   New York, New York
         August 24, 2010

Respectfully submitted,

**LOWENSTEIN SANDLER PC**
*Attorneys for Defendants*

By:  /s/  Kevin M. Brennan  (KB 3184)