```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MARIO FRATI, STACY FRATI, and              :
BANCO POPULARE (LUXEMBOURG) S.A.,
                                           :
              Plaintiffs,
                                           :      10 Civ. 3255 (PAC)
       - against -
                                           :      ORDER
STEPHEN E. SALTZSTEIN,
et al.,                                    :

              Defendants.                  :
-------------------------------------------------------------X
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  March 14, 2011
```

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiffs Mario Frati, Stacy Frati (the "Fratis") and Banco Popolare (Luxembourg) S.A. ("BPL") (together, "Plaintiffs"), bring this action against Defendants Stephen Saltzstein ("Saltzstein"), Michael Fein ("Fein"), RAM Capital Resources, LLC ("RAM"), Shelter Island Opportunity Fund, LLC ("Shelter Fund" or "Shelter"), Shelter Island GP, LLC, Midway Management Partners, LLC ("Midway"), Truk International Fund, LP ("Truk Fund" or "Truk"), Truk Opportunity Fund, LLC, and Atoll Asset Management, LLC (together, "Defendants"), alleging violations of the Securities Exchange Act of 1934 ("'34 Act"), common law fraud, breach of fiduciary duty, unjust enrichment, and breach of contract.  In addition, Plaintiffs request rescission under § 29(b) of the '34 Act and a declaratory judgment that Defendants cannot use investor funds to indemnify themselves for the costs of litigating this suit.  Plaintiffs claim that Saltzstein and Fein fraudulently induced them to make investments in hedge funds by misrepresenting certain facts and omitting others. Defendants now move to dismiss the Amended Complaint in its entirety, asserting that certain clauses in the Subscription Agreements that

1

Plaintiffs signed preclude Plaintiffs' claims as a matter of law. Defendants also argue that Plaintiffs' have not stated a federal claim and that Plaintiffs' cannot establish diversity jurisdiction.

Defendants' motion to dismiss is GRANTED with respect to Plaintiffs' federal claims. As to the state law claims, Defendants' motion is deferred subject to renewal upon completion of limited, expedited discovery of the membership of the Defendant Limited Liability Companies ("LLCs") and Limited Partnerships ("LPs").

## **BACKGROUND**[1]

According to the facts alleged in the Amended Complaint, in late 2006, Saltzstein phoned Mario Frati in an attempt to secure an investment in the Shelter Fund, which he and Fein managed through their company, RAM. (Am. Compl. ¶ 27.) Following this phone call and again in 2007, Saltzstein traveled to meet with the Fratis in Florida to obtain their investment. (Id. ¶ 28.) During a late 2007 meeting, Mario Frati asked Saltzstein if his sister, a childhood friend of Stacy Frati, was an investor in Shelter. (Id.) Saltzstein replied that she was. (Id.) Saltzstein also allegedly told the Fratis that most of Saltzstein's and Fein's own net worth was invested in the funds and that any investment that they might make could be redeemed after a six-month lockup period. (Id.) These representations are said to be untrue. (Id.) In addition, Saltzstein and Fein never informed the Fratis that Saltzstein, Fein, and RAM were, at the time of the Fratis' investment, under investigation by the SEC for violation of the federal securities laws. (Id.)

---

[1] Plaintiffs filed their initial complaint on April 16, 2010. Plaintiffs' Amended Complaint is dated June 29, 2010 and asserts claims for, among other things, common law fraud, misrepresentations under Section 10(b) of the '34 Act and Rule 10b-5, fraudulent inducement, and breach of contract. It should be noted that the Amended Complaint has not been properly filed with the Clerk of Court. As a result, the Court directs Plaintiff to properly file the Amended Complaint with the Clerk of Court as soon as possible. The Clerk of Court is directed to accept the Amended Complaint for filing as of August 25, 2010, the date a Courtesy Copy was received in Chambers.

Eventually, the Fratis agreed to invest $2 million in Shelter. (Id. ¶ 29.) On January 3, 2008, the Fratis signed their Subscription Agreement and wired the $2 million investment. (Id. ¶ 32, Ex. C.) They were not provided with the private placement memorandum ("PPM") prior to signing. (Id.) By Signing the Subscription Agreement, Mario Frati affirmed that he was an "Accredited Investor" with a net worth that exceeded $1 million, and "that he ha[d] carefully read, underst[ood], and agree[d] to abide by the terms set forth in the Memorandum, and the Amended and Restated Limited Liability Company Agreement of the Fund." (Def. Mem. 6.; Brennan Aff. Ex. A, at 1 ¶ 2, 3 ¶ 8, 8.) In addition, the Shelter Subscription Agreement stated that "[i]in deciding to invest in the Fund, Subscriber has relied solely upon the information in the Memorandum and has not relied on oral representations or warranties." (Brennan Aff. Ex. A, at 2 ¶ 3.)

Based on the representations made to the Fratis, BPL made a $1.5 million investment in the Truk Fund, on behalf of its client, Mirella Siroli, Mario Frati's mother. (Am. Compl. ¶ 34-35.) Neither BPL nor Siroli were provided with the Truk PPM before signing the Subscription Agreement. (Id.) By signing the Subscription Agreement, however, BPL affirmed that it had "prior experience in investing in the private placement of restricted securities involving the payment of performance based compensation," and that it had "carefully read, underst[ood], and agree[d] to abide by the terms set forth in the Memorandum and Partnership Agreement." (Brennan Aff. Ex. B 1 ¶ 2, 18 ¶ 7.) In addition, the Truk Subscription Agreement stated that "[i]n deciding to invest in the Fund, Subscriber has relied solely upon the information in the Memorandum and has not relied on oral representations or warranties." (Brennan Aff. Ex. B, at 2 ¶ 3.)

## **LEGAL STANDARD**

When considering a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), "the court is to accept as true all facts alleged in the complaint" and "draw all reasonable inferences in favor of the plaintiff." Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949-50 (2009). To avoid dismissal, the complaint must contain "enough facts to state a claim to relief that is plausible on its face," i.e. facts that "nudge[] [the plaintiff's] claims across the line from conceivable to plausible . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In considering a motion to dismiss, a court may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference." Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991). Additionally, a court may also consider a particular document, which is integral to the claims at issue, of which the plaintiff has notice. Yak v. Bank Brussels Lambert, 252 F.3d 127, 130-31 (2d Cir. 2001); see Cortec, 949 F.2d at 47 ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a prospectus upon which it solely relies and which is integral to the complaint, the defendant may produce the prospectus when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure.")

Plaintiffs' claims sounding in fraud must meet the pleading requirements of Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). Rule 9(b) provides that "in

4

averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." Fed. R. Civ. P. 9(b).  Rule 9(b) requires that a complaint alleging fraud "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Rombach v. Chang, 355 F3d 164, 170 (2d Cir. 2004).  Under the PSLRA, "where misleading statements or omissions under § 10(b) are alleged, a plaintiff must 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.'" Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP, 612 F. Supp. 2d 267, 275 (S.D.N.Y. 2009) (quoting 15 U.S.C. § 78u-4(b)(1)).

## DISCUSSION

### I. Plaintiffs' Federal Securities Fraud Claims

"To state a claim for securities fraud under Section 10(b) and Rule 10b-5, a plaintiff must plead that the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that the plaintiff's reliance on the defendant's action caused injury to the plaintiff." San Diego Cnty. Emps. Ret. Ass'n v. Maounis, No 07 Civ. 2618 (DAB), 2010 WL 1010012, *13 (S.D.N.Y. Mar. 15, 2010) (citation omitted). "A statement or omission is 'material' if there is 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly

altered the "total mix" of information made available.'" Id. (quoting Halperin v. eBanker USA.com, Inc., 295 F.3d 352, 357 (2d Cir. 2002).

Plaintiff must show "reasonable reliance on the alleged misrepresentations and omissions." Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc., 343 F.3d 189, 195 (2d Cir.2003). "In assessing the reasonableness of a plaintiff's alleged reliance, courts in this Circuit consider the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." San Diego, 2010 WL 1010012, at *13 (citing Emergent Capital, 343 F.3d at 195).

Defendants argue that Plaintiffs have not adequately stated a claim for securities fraud and that the Subscription Agreements are fatal to all of Plaintiffs' fraud-based claims. Specifically, Defendants contend that the Subscription Agreements "contain express representations, warranties, and disclaimers that (i) negate each allegation on which Plaintiffs' alleged fraud claims are based and (ii) preclude Plaintiffs, as a matter of law, from demonstrating the element of reasonable reliance necessary to maintain each of their fraud-based claims." (Def. Mem. 10.) Each Plaintiff signed a Subscription Agreement which attested that each had read and agreed to abide by the terms of their respective Fund's PPM and relied only on the information in that PPM in deciding to invest in their respective Fund. (Def. Mem. 11.)

Defendants insist that San Diego is directly on point. In San Diego, the plaintiff retirement fund alleged that the defendant had made oral misrepresentations which induced the plaintiff to invest in a fund. San Diego, 2010 WL 1010012, at *13-14. The defendant argued, however, that there were disclaimer provisions in the agreements that plaintiff signed which were fatal to the plaintiff's claims. Id. The court dismissed the plaintiff's claims because the language of the non-reliance provisions was unambiguous, because the plaintiffs were sophisticated

6

investors, and because, as a result, reliance on the defendant's oral representations was unreasonable. Id. at *14-17.  Here, Defendants argue that Plaintiffs' fraud claims must be dismissed as a matter of law for the same reasons.  Plaintiffs contend, however, that San Diego should not apply because they are less sophisticated than the retirement fund in San Diego, (Pl. Mem. 10), even though Plaintiffs affirmed that they are "Accredited Investors," (Brennan Aff., Ex. A, at 8; Ex. B, at 8).

A. Misrepresentations

Plaintiffs allege that Defendants fraudulently misrepresented (1) that Saltzstein's sister was an investor in the relevant fund, (2) that Saltzstein and Fein themselves were heavily invested in the funds, and (3) that Plaintiffs could redeem their investments after six months. (See Am. Compl. ¶ 28, 75.)  In addition, Plaintiffs allege that these representations, at least in part, formed the basis of their decision to invest in the Shelter and Truk Funds.  (Am. Compl. ¶ 69-72.)  Defendants, however, argue that the disclaimers in the Subscription Agreements are fatal to these allegations because the disclaimers reflect the fact that Plaintiffs were not relying on such oral representations and that Plaintiffs had read the PPMs. (Def. Mem. 13-14.)

Plaintiffs' claims regarding the supposed investments of Saltzstein, Fein, and Saltzstein's sister fail at the outset.  These statements are immaterial and any alleged reliance such information is patently unreasonable.  Specifically, regardless of the complexity of the transaction (and the one at issue here is not complex) or the sophistication of the parties (and Plaintiffs are Accredited Investors), no reasonable investor would make an investment in any venture based on the representation that the promoter's sister, who was a close friend of the investor's wife, was also an investor. (Am. Compl. ¶ 26.)  Plaintiffs argument about reliance is

nonsense.  Not only could the information easily have been verified by the childhood friends speaking to one another, the alleged representations to the Accredited Investors fly in the faces of the disclaimers in the Subscription Agreements.

With respect to Plaintiffs' allegations relating to Saltzstein's and Fein's oral representation of a six-month lockup period, although such information is undoubtedly material in some sense, even Accredited Investors are required to read the transaction documents. The PPMs at issue here clearly delineate a twelve-month lockup period. (See Brennan Aff., Ex. C at 7, Ex. D ¶ 3.14.1.)  As a result, had Plaintiffs simply requested copies of and reviewed their respective PPMs, such information would have been obvious.  In light of the context of this transaction and the disclaimers in the Subscription Agreements, Plaintiffs' reliance on Saltzstein's oral representation was simply not reasonable.  See San Diego, 2010 WL 1010012, at *13.

Even crediting Plaintiffs' allegations of Defendants' untruths, Plaintiffs' reliance was unreasonable.  Thus, their § 10(b) and Rule 10b-5 claims fail as a matter of law.

B. Omissions

Plaintiffs allege three frauds by omission in that Defendants failed to inform Plaintiffs that:  (1) Saltzstein, Fein, and RAM were under investigation by the SEC at the time that Plaintiffs invested in the Funds; (2) Saltzstein, Fein, and RAM were acting as unlicensed broker-dealers in violation of federal securities law; and (3) they did not intend to manage the funds in good faith, including "fraudulently inflating fund valuations in order to generate higher commissions, entering into sham transactions, loaning monies to themselves and other funds

managed by them and giving preferences for redemptions to themselves and their family and/or friends." (Pl. Mem. 13-14.)

There is no liability for fraud by omission under the securities laws unless there is a duty to disclose the information at issue. In re Time Warner Inc. Sec. Litig., 9 F.3d 259, 267 (2d Cir. 1993). "[A] duty to disclose arises when disclosure is necessary to make prior statements not misleading." Id.

All of the omissions complained of by Plaintiffs involve either (1) information that was available to Plaintiffs if they had read the PPM or asked intelligent and obvious questions prior to investment, or (2) information that Defendants specifically did not have a duty to disclose. If Plaintiffs were concerned about the structure or legality of the Shelter or Truk Funds, they could have investigated prior to investing — "[t]he law does not impose a duty to disclose uncharged, unadjudicated wrongdoing or mismanagement." Ciresi v. Citicorp, 782 F. Supp. 819, 823 (1991). Plaintiffs' allegations relating to Fund structure and fees fail because Plaintiffs could have easily informed themselves about these issues if they had insisted on reading the PPMs before signing the Subscription Agreements or had simply performed a cursory investigation regarding the fund in which they were planning to invest. Even though Plaintiffs prefer to walk away from their Accredited Investor status, Plaintiffs cannot claim that they were uninformed about the inner-workings of a fund in which they planned to invest if they did not feel it necessary to review the fund documentation or perform any research prior to making such an investment. Thus, Plaintiffs' reliance on the silence of Saltzstein and Fein on these issues was clearly unreasonable.

Plaintiffs also contend that because Defendants disclosed the SEC investigation in a letter to investors on March 2, 2009, Defendants ostensibly admitted that they had the obligation to so prior to the Plaintiffs' investment. (Pl. Mem. 14-15.)  This allegation, however, is not reflected in

the Amended Complaint and, as such, should not be considered by the Court. Fadem v. Ford Motor Co., 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005).  In any event, the assertion is unavailing. The fact that Defendants made such a disclosure does not, in and of itself, indicate that Defendants have admitted that such disclosure was actually required.

Accordingly, Plaintiffs' allegations with respect to these omissions fail as a matter of law.

**II. Plaintiffs' Claim for Rescission Under '34 Act § 29(b)**

Section 29(b) of the '34 Act states that:

Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder, and every contract (including any contract for listing a security on an exchange) heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void . . . .

15 U.S.C. § 78cc(b).  "To establish a violation of Section 29(b), the plaintiffs must show that (1) the contract involved a prohibited transaction, (2) [they are] in contractual privity with the defendant[s], and (3) [they are] in the class of persons the Act was designed to protect." Pompano-Windy City Partners, Ltd. v. Bear Stearns & Co., Inc., 794 F. Supp. 1265, 1288 (S.D.N.Y. 1992) (citations and internal quotation marks omitted).  In addition, "under § 29(b) of the Exchange Act, only unlawful contracts may be rescinded, not unlawful transactions made pursuant to lawful contracts." Id. (quoting Zerman v. Jacobs, 510 F. Supp. 132, 135 (S.D.N.Y. 1981)).

Plaintiffs claim that they have the right of rescission under § 29(b) of the '34 Act for three reasons. First, Plaintiffs claim that they may rescind the agreement because "the executed subscription documents were the product of fraudulent inducement in violation of the anti-fraud provisions of the Securities Act." (Pl. Mem. 20 n.45.)  As stated in section I, *supra*, however,

10

Plaintiffs have not demonstrated such fraudulent inducement under the securities laws.  Second, Plaintiffs claim that the PPMs "fraudulently represent that Defendant Midway is registered as an investment advisor with the SEC — such fraudulent statement being a violation of The Investment Advis[e]rs Act of 1940." (Id.)  A violation of the Investment Advisers Act, however, cannot be a predicate for rescission under § 29(b) of the '34 Act.  15 U.S.C. § 78cc(b).[2]

Lastly, Plaintiffs claim that § 29(b) gives them the right to rescind the Subscription Agreements because RAM, Saltzstein, and Fein failed to register as broker-dealers under § 15(a)(1) of the '34 Act.[3] (Pl. Mem. 20 n.45.)  There is, however, no reason to believe that the contracts themselves could not be legally performed — a fact which is fatal to Plaintiffs' claim.  See Pompano-Windy City, 794 F. Supp. at 1288.   Stated differently, Plaintiffs have not alleged any act, either reflected in the PPMs or Subscription Agreements or that has been performed by RAM, Saltzstein, or Fein, that requires RAM, Saltzstein, or Fein to be a registered broker-dealer.  Indeed, as Defendants point out, the PPMs state that if a registered broker-dealer is needed, the work will be subcontracted. (See, e.g., Brennan Aff. Ex. C at 43-45.)

In addition, Plaintiffs are in contractual privity only with Shelter and Truk.  (Def. Mem. 22.)  They are not in privity with RAM, Saltzstein, or Fein — the defendants that Plaintiffs allege were required to register as broker-dealers — and Plaintiffs fail to allege that Shelter or Truk

---

[2] Although § 215(b) of the Investment Advisors Act is a "comparable provision" to § 29(b) of the '34 Act, Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11, 18-19 (1979), it does not follow that a violation of the Investment Advisers Act may be a predicate for § 29(b) rescission.  By the clear language of the section, rescission is only available under § 29(b) for violations of the '34 Act.

[3] While Defendants acknowledge that the Second Circuit has not addressed whether a violation of § 15(a)(1) can serve as a predicate for a § 29(b) action for rescission, the Court need not address this question because Plaintiffs' § 29(b) claim would be dismissed even it the Court found that a §15(a)(1) violation could form such a predicate.

were required to register as broker-dealers.  As such, the contract at issue is not subject to rescission under § 29(b).  See Pompano-Windy City, 794 F. Supp. at 1288.

**III. Diversity Jurisdiction**

As Plaintiffs' federal claims fail, the only remaining basis for this Court's subject matter jurisdiction is diversity jurisdiction under 28 U.S.C. § 1332(a). There is no diversity jurisdiction where a plaintiff and a defendant are citizens of the same state. 28 U.S.C. § 1332(a); see Wis. Dep't of Corr. v. Schacht, 524 U.S. 381, 388 (1998).  Additionally, there is no diversity jurisdiction where a plaintiff and a defendant are both aliens, even if they are citizens of different countries. See Univ. Licensing Corp. v. Paolo Del Lungo S.p.A., 293 F.3d 579, 580-81 (2d Cir. 2002).  The citizenship of an LLC or an LP is based on the citizenship of each of its members or partners. See Carden v. Arkoma Assocs., 494 U.S. 185, 195-96 (1990).

The documents currently before the Court suggest that there is a lack of complete diversity and that the state law claims should be dismissed for lack of subject matter jurisdiction. Specifically, the Declaration of Michael Fein ("Fein Declaration") states that the Fratis are citizens of Florida and that at least one member of Shelter is a Florida citizen. (Fein Decl. ¶ 3.) In addition, the Fein Declaration states that BPL and one of Truk's members are both aliens. (Fein Decl. ¶ 2.)  The Court, however, will afford Plaintiffs limited, expedited discovery on this issue, and defer consideration of Defendants motion to dismiss for lack of diversity until completion of such discovery.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED with respect to Plaintiffs' federal claims.  With respect to Plaintiffs' state law claims, Defendants' motion is

deferred subject to renewal of the motion upon completion of limited, expedited discovery as to the membership of the Defendant LLCs and LPs.

The Clerk of Court is directed to close the motion at docket number 10. In addition, Plaintiff is directed to properly file its Amended Complaint, dated June 29, 2010, with the Clerk of Court. The Clerk of Court is directed to accept the Amended Complaint for filing as of August 25, 2010, the date a Courtesy Copy was received in Chambers.

Dated: New York, New York
      March 14, 2011

SO ORDERED

*/s/ Paul A. Crotty*
PAUL A. CROTTY
United States District Judge